COLUMBUS BAR ASSOCIATION *v.* DOUGHERTY.

[Cite as *Columbus Bar Assn. v. Dougherty,*
99 Ohio St.3d 147, 2003-Ohio-2672.]

(No. 2002–1460—Submitted January 23, 2003—Decided June 4, 2003.)

**Per Curiam.**

{¶ 1}   Respondent, Gina Mary Dougherty of Columbus, Ohio, Attorney Registration No. 0022195, was admitted to the practice of law in Ohio in 1982.   On October 8, 2001, relator, Columbus Bar Association, filed a complaint charging respondent with violations of the Code of Professional Responsibility.   Respondent answered the complaint, and a panel of the Board of Commissioners on Grievances and Discipline heard the cause, making findings of fact, conclusions of law, and a recommendation.

{¶ 2}   In anticipation of the hearing scheduled for May 24, 2002, the parties stipulated that respondent had violated DR 1–102(A)(6) (engaging in conduct adversely reflecting on an attorney's fitness to practice law) by notarizing a signature that she had not witnessed on an application for a liquor permit.   On May 10, 2002, however, relator filed a prehearing brief in which it argued that respondent had also perpetrated a scheme to defraud the Ohio Division of Liquor Control.   Respondent maintained that these allegations were not charged in the complaint with the particularity required by Civ.R. 9(B) for allegations of fraud and, on May 20, 2002, moved to limit the scope of the hearing and strike all allegations relating to the alleged fraud.

{¶ 3}   At the hearing four days later, the panel allowed relator to respond orally to the motion in limine and motion to strike and heard respondent's reply. After deliberation, the panel agreed that the complaint had not provided sufficient notice and granted both motions.   The panel permitted relator to proffer the evidence of the alleged fraud, observing that relator had not moved for a continuance or amended the complaint prior to the hearing.

{¶ 4} Based on the stipulations and evidence other than the proffered testimony and exhibits, the panel found that a client asked respondent in late 1999 or early 2000 to secure a liquor permit in anticipation of the client's opening of a new restaurant. In addition to her efforts to obtain the type of long-term liquor permit that the client wanted, respondent provided the client a blank application for an F–2 permit. An F–2 permit allows nonprofit organizations to sell alcohol during special events for a period of 48 hours.

{¶ 5} The client took the blank application to an investor in the restaurant who was also a member of a nonprofit religious organization, apparently for the investor to obtain an appropriate affiant's signature to authenticate the application on the club's behalf. The investor returned the application to the client partially completed and with a handwritten authorization that purported to be the signature of the organization's president. The client then gave the incomplete application back to respondent, and she filled in the other required information. Respondent also notarized the signature on the application, notwithstanding that she did not see the affiant sign it.

{¶ 6} Respondent's client was granted an F–2 permit based on this application. However, the propriety of the permit was later questioned in a published newspaper article that came to the attention of the actual president of the nonprofit organization. The president, who had neither signed the application nor known that his organization had applied for a liquor permit, became concerned about how the permit had been obtained. After some investigation, the president learned that the club member/restaurant investor had attempted to authorize the application on behalf of the organization. The investor had signed without authority the name of a third club member and erroneously identified that club member as the organization's president.

{¶ 7} The panel found respondent in violation of DR 1–102(A)(6) because she did not witness the affiant's signature on the permit application as required by the notarization jurat. However, because no evidence substantiated that respondent had known that the permit application was signed improperly, the panel did not find the other misconduct alleged in the complaint, including that respondent had violated DR 1–102(A)(4) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation).

{¶ 8} In recommending a sanction, the panel considered that respondent had no prior history of discipline, had conceded her misconduct from the inception of these proceedings, and had apologized for it. And while the panel also acknowledged the consternation that respondent had caused members of the religious nonprofit organization, it was impressed with respondent's sincerity and her character witnesses. The panel concluded that respondent was, in all likelihood, an attorney of integrity who had simply made a mistake that would not recur.

{¶ 9} The panel recommended that respondent be publicly reprimanded for her misconduct. The board adopted the panel's finding that respondent had violated DR 1–102(A)(6), but it amended the conclusions of law to include a violation of DR 1–102(A)(4). The board also recommended that respondent receive a public reprimand and further that the Ohio Notary Commission be notified of this sanction.

{¶ 10} In objections to the board's report, relator urges us further to find that respondent perpetuated a scheme to defraud the Division of Liquor Control and impose an actual suspension of respondent's law license, arguing that the panel should have admitted the proffered evidence. This evidence, according to relator, proves that respondent attempted to circumvent the liquor laws by acquiring, through bogus applications, a series of temporary liquor permits for her client to use in place of the long-term liquor permit that he wanted but which was not immediately available. Relator also maintains that this scheme was alleged with particularity in its complaint in accordance with Civ.R. 9(B).

{¶ 11} We agree with the board that relator's complaint was deficient. Paragraphs 2 and 3 of the complaint allege that in attempting to secure a permit for her client to serve alcohol in his restaurant "as soon as possible," respondent had "applied for a series of temporary liquor permits (designated 'F' or 'F–2') which are intended only for religious purposes or charitable purposes." However, nowhere does the complaint tie these factual allegations to the charge made in the last paragraph that respondent had committed fraud for purposes of DR 1–102(A)(4). In fact, every intervening paragraph refers to allegations associated with the single F–2 application that respondent stipulated to having improperly notarized. The series of temporary liquor permit applications is never mentioned again. The complaint, therefore, did not give respondent sufficient notice of the fraud with which relator intended to charge her.

{¶ 12} Relator also argues that respondent's motions to limit and strike were filed just four days before the panel hearing and were therefore out-of-rule. Relator relies on Civ.R. 6(D), which requires that certain written motions be filed at least seven days before hearing, but the issue is whether relator received adequate notice and time to respond. We find no prejudice, even assuming that the motions were untimely. Not only did the panel allow ample opportunity for argument at the hearing, but relator made precisely the same argument then as it makes now.

{¶ 13} Accordingly, we adopt the finding that relator's complaint did not charge fraud with the particularity that Civ.R. 9(B) requires. But our discussion cannot end here. Upon independent review of the record, *Columbus Bar Assn. v. Plymale* (2001), 91 Ohio St.3d 367, 745 N.E.2d 413; *Ohio State Bar Assn. v. Reid* (1999), 85 Ohio St.3d 327, 708 N.E.2d 193, we also find that, in addition to

arguing against respondent's motions to strike and limit at the hearing, relator asked the panel for leave to amend the complaint in the event the motions were granted.

{¶ 14} The board, via its panel, did not grant this request, apparently because the panel decided that relator, upon receiving notice that its pleading was arguably inadequate, should have amended the complaint on its own before the hearing. Respondent, however, had already answered. Thus, under Civ.R. 15(A), relator could have amended its complaint in only two ways: (1) by obtaining respondent's consent to the amendment in writing, which was highly unlikely, or (2) by being granted leave to amend the complaint by the panel. Civ.R. 15(A).

{¶ 15} When a tribunal is faced with a request for leave to amend a complaint, Civ.R. 15(A) directs it to grant such leave "freely" and "when justice so requires." Justice surely required leave to amend in this case. Respondent received insufficient notice from the complaint of the breadth of relator's charges. And since respondent's discovery also focused completely on the one admittedly improper F–2 application, relator's responses correspondingly did not reveal the extent of any impropriety beyond that one application. There is no evidence that relator was aware of the insufficiency of its pleading. In fact, relator's representatives conceded that in the course of accommodating respondent's discovery requests, they had been unable to understand why respondent had not inquired further as to the other temporary permit applications referred to in the complaint.

{¶ 16} We find that the parties mutually misunderstood what charges were truly at issue in this case. This finding and our obligation to protect the public from fraud, such as that which relator intended to charge, prevent us from reaching the board's findings of fact, conclusions of law, and recommended sanction, although the parties argue for disposition on the merits. Instead, because justice requires it, we now grant relator leave to amend its complaint.

{¶ 17} Accordingly, we remand this cause to the board for further proceedings consistent with our order. These proceedings should include provisions for relator's amendment of the complaint, discovery as appropriate, and hearings as necessary. Costs to abide final determination of the case.

Judgment accordingly.

MOYER, C.J., RESNICK, HARSHA, LUNDBERG STRATTON and O'CONNOR, JJ., concur.

F.E. SWEENEY and PFEIFER, JJ., dissent because they would stay a twelve-month suspension.

WILLIAM H. HARSHA III, J., of the Fourth Appellate District, sitting for COOK, J.

David K. Greer; Bruce Campbell, Bar Counsel, and Jill M. Snitcher McQuain, Assistant Bar Counsel, for relator.

Kegler, Brown, Hill & Ritter, Christopher J. Weber and Geoffrey Stern, for respondent.