COLUMBUS BAR ASSOCIATION *v.* DOUGHERTY.

[Cite as *Columbus Bar Assn. v. Dougherty,*
105 Ohio St.3d 307, 2005-Ohio-1825.]

(No. 2002–1460—Submitted January 18, 2005—Decided May 4, 2005.)

_____

**Per Curiam.**

{¶ 1} Respondent, Gina Mary Dougherty of Columbus, Ohio, Attorney Registration No. 0022195, was admitted to the practice of law in Ohio in 1982. On October 8, 2001, relator, Columbus Bar Association, charged in a single-count complaint that respondent had violated the Code of Professional Responsibility, including DR 1–102(A)(4) (prohibiting conduct involving fraud, deceit, dishonesty, or misrepresentation) and 1–102(A)(6) (prohibiting conduct that adversely reflects on a lawyer's fitness to practice law). The Board of Commissioners on Grievances and Discipline found the cited misconduct based on respondent's admission that she had notarized an affiant's signature on a client's liquor-permit application but had not actually witnessed the signature as required by the notarization jurat. The board recommended that respondent be publicly reprimanded for this misconduct and that notice of this sanction be provided to the Ohio Notary Commission.

{¶ 2} We initially considered the board's findings and recommendation in *Columbus Bar Assn. v. Dougherty,* 99 Ohio St.3d 147, 2003-Ohio-2672, 789 N.E.2d 621 *("Dougherty I").* In *Dougherty I,* we remanded this cause to the board for further proceedings, including allowance of a proposed amendment to the complaint. We found that the complaint as originally issued had not sufficiently apprised respondent of the misconduct that relator argued had been charged in it, particularly with respect to other reported Disciplinary Rule violations.

{¶ 3} On remand, relator amended its complaint to include a second count specifically alleging that respondent had contrived a fraudulent scheme to circumvent liquor-control laws by "stacking" temporary liquor permits available to nonprofit organizations for fund-raising events, thereby enabling her client to sell alcohol in his restaurant while waiting for a regular permit. The board recon-

vened the panel that had originally heard the cause, and, with the parties' agreement, the panel heard evidence only as to the second count.

{¶ 4} The panel unanimously dismissed the second count of the amended complaint, and the board reiterated its findings that respondent had violated DR 1–102(A)(4) and (6) by notarizing an affiant's signature without having actually witnessed the signature. The board also repeated its previous recommendation that respondent receive a public reprimand.

{¶ 5} We summarized in *Dougherty I* the facts underlying the board's findings of misconduct:

{¶ 6} "[A] client asked respondent in late 1999 or early 2000 to secure a liquor permit in anticipation of the client's opening of a new restaurant. In addition to her efforts to obtain the type of long-term liquor permit that the client wanted, respondent provided the client a blank application for an F–2 permit. An F–2 permit allows nonprofit organizations to sell alcohol during special events for a period of 48 hours.

{¶ 7} "The client took the blank application to an investor in the restaurant who was also a member of a nonprofit religious organization, apparently for the investor to obtain an appropriate affiant's signature to authenticate the application on the club's behalf. The investor returned the application to the client partially completed and with a handwritten authorization that purported to be the signature of the organization's president. The client then gave the incomplete application back to respondent, and she filled in the other required information. Respondent also notarized the signature on the application, notwithstanding that she did not see the affiant sign it.

{¶ 8} "Respondent's client was granted an F–2 permit based on this application. However, the propriety of the permit was later questioned in a published newspaper article that came to the attention of the actual president of the nonprofit organization. The president, who had neither signed the application nor known that his organization had applied for a liquor permit, became concerned about how the permit had been obtained. After some investigation, the president learned that the club member/restaurant investor had attempted to authorize the application on behalf of the organization. The investor had signed without authority the name of a third club member and erroneously identified that club member as the organization's president." *Dougherty I,* 99 Ohio St.3d 147, 2003-Ohio-2672, 789 N.E.2d 621, ¶ 4–6.

{¶ 9} The panel found and relator concedes that the unanimous dismissal of Count Two precluded further review of the dismissal either by the board or this court. See Gov.Bar R. V(6)(H) and (I) and *In re Complaint Against Harper* (1996), 77 Ohio St.3d 211, 216, 673 N.E.2d 1253. Thus, today we review only the board's findings of misconduct and recommendation as to Count One, and we find

that respondent violated DR 1–102(A)(4) and (6). We also agree that a public reprimand is appropriate and, therefore, overrule relator's objections to this sanction.

{¶ 10} Relator argues that a public reprimand is inadequate to censure respondent's dishonesty and urges us to suspend her license to practice law for 18 months, with the last 12 months stayed. Relator relies on *Disciplinary Counsel v. Fowerbaugh* (1995), 74 Ohio St.3d 187, 658 N.E.2d 237, syllabus, and its progeny for the proposition that a violation of DR 1–102(A)(4) requires that the lawyer "be actually suspended from the practice of law for an appropriate period of time." Most specifically, respondent cites *Lorain Cty. Bar Assn. v. Papcke* (1998), 81 Ohio St.3d 91, 689 N.E.2d 549, in which a lawyer twice notarized a client's signature that had been forged by the lawyer's secretary, misled the client about the filing date of a divorce case, neglected the client's case, and did not cooperate in the ensuing disciplinary investigation. In *Papcke*, even with the mitigating effect of good character and a contributing mental-health condition, we imposed the sanction that relator advocates here.

{¶ 11} Citing *Cincinnati Bar Assn. v. Reisenfeld* (1998), 84 Ohio St.3d 30, 701 N.E.2d 973, among other cases, respondent rejoins that her misconduct resulted from a single isolated incident and does not manifest the deceptive course of conduct for which an actual suspension of her license should result, especially considering the mitigation evidence she presented. See *Disciplinary Counsel v. Heffter*, 98 Ohio St.3d 320, 2003-Ohio-775, 784 N.E.2d 693, in which we deviated from the rule in *Fowerbaugh* due to mitigating circumstances, and Section 10(B) of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg."). Respondent emphasizes the fact that four attorneys testified to her competence and integrity in over 20 years of practice. Respondent further points out that she has no prior disciplinary record, immediately acknowledged her misconduct, apologized for it with sincerity, and completely cooperated in the disciplinary proceedings. Respondent insists that her transgressions warrant only a public reprimand.

{¶ 12} We find *Disciplinary Counsel v. Simon* (1994), 71 Ohio St.3d 437, 644 N.E.2d 309, most analogous to respondent's case. There, we publicly reprimanded a lawyer who notarized the signatures of two grantors on a deed, both of which his client had represented to be genuine, though neither signature had been affixed in the lawyer's presence. The two signatures in *Simon* belonged to the client's parents, but these situations are otherwise essentially the same because both attorneys ignored their duties as notaries public.

{¶ 13} In *Lorain Cty. Bar Assn. v. Kennedy* (2002), 95 Ohio St.3d 116, 766 N.E.2d 151, a case in which we enjoined a notary from practicing law without a

license, we observed the importance of the notary's duty under R.C. 147.07 to administer oaths and take and certify acknowledgements of documents. Quoting *Papcke*, 81 Ohio St.3d at 93, 689 N.E.2d 549, we explained:

{¶ 14} " 'Documents acknowledged by [a notary] are self-authenticating. Evid.R. 902(8); Fed.R.Evid. 902(8). A notary who certifies to the affidavit of a person without administering the oath or affirmation to that person as required by R.C. 147.14 is subject to a fine of up to $100 or imprisonment of up to thirty days, or both. R.C. 147.99(B).' " *Kennedy*, 95 Ohio St.3d at 117, 766 N.E.2d 151.

{¶ 15} For that reason, we admonished that notaries " 'must not take a cavalier attitude toward their notary responsibilities and acknowledge the signatures of persons who have not appeared before them.' " Id., quoting *Papcke*, 81 Ohio St.3d at 93, 689 N.E.2d 549. In this regard, respondent and the lawyer in *Simon* failed completely. Neither lawyer, however, forged a signature, knew of a forgery, or engaged in deceit or other misconduct beyond failing to witness signatures as required.

{¶ 16} As respondent points out, these more egregious infractions distinguish her case and *Simon* from others in which we have imposed suspensions, actual or stayed, for notary-related misconduct. See, e.g., *Disciplinary Counsel v. Bandy* (1998), 81 Ohio St.3d 291, 690 N.E.2d 1280 (lawyer suspended for two years, with 18 months conditionally stayed, for falsely authenticating a will that named him as beneficiary); *Disciplinary Counsel v. Shaffer*, 98 Ohio St.3d 342, 2003-Ohio-1008, 785 N.E.2d 429 (lawyer suspended for one year, with six months conditionally stayed, for helping client sell an incapacitated relative's home by advising client to sign power of attorney for the relative, signing as a witness to authenticate the forged relative's signature, notarizing the forged signature, backdating the jurat, and instructing his secretary to sign the power of attorney as second witness to the forged signature); *Akron Bar Assn. v. Coombs* (1999), 85 Ohio St.3d 391, 709 N.E.2d 108 (lawyer suspended for six months, all conditionally stayed with probation, for representing client shortly before admission to bar and failing to properly witness signatures on two leases); and *Heffter*, 98 Ohio St.3d 320, 2003-Ohio-775, 784 N.E.2d 693 (lawyer suspended for six months, all conditionally stayed, for notarizing without having actually witnessed the signatures of two minor heirs on limited powers of attorney).

{¶ 17} This distinction, coupled with mitigation and lack of any evidence establishing a course of conduct designed to deceive, permits a less onerous sanction for respondent's violation of DR 1–102(A)(4). Thus, for respondent's violation of DR 1–102(A)(4) and consequent violation of DR 1–102(A)(6), she is hereby publicly reprimanded. Costs are taxed to respondent.

Judgment accordingly.

RESNICK, PFEIFER, LUNDBERG STRATTON and O'DONNELL, JJ., concur.

MOYER, C.J., O'CONNOR and LANZINGER, JJ., dissent.

---

**MOYER, C.J., dissenting.**

{¶ 18} I respectfully dissent from the majority opinion with respect to the sanction imposed on respondent.

{¶ 19} In *Disciplinary Counsel v. Fowerbaugh* (1995), 74 Ohio St.3d 187, 658 N.E.2d 237, syllabus, we held that when an attorney engages in dishonest or fraudulent conduct, "the attorney will be actually suspended from the practice of law for an appropriate period of time."

{¶ 20} In disciplinary cases decided since *Fowerbaugh*, we have consistently held lawyers to a high standard of honesty and trust and have suspended lawyers who have failed to adhere to that standard. We have also held lawyers acting in the capacity of a notary to this high standard. See *Lorain Cty. Bar Assn. v. Papcke* (1998), 81 Ohio St.3d 91, 689 N.E.2d 549. As we stated in *Papcke*, "lawyers must not take a cavalier attitude toward their notary responsibilities and acknowledge the signatures of persons who have not appeared before them." Id. at 93, 689 N.E.2d 549. Such an attitude, we reasoned, "breeds disrespect for the law and for the legal profession." Id. at 93–94, 689 N.E.2d 549.

{¶ 21} In this case, respondent admitted that she had notarized the liquor-permit application outside the presence of the purported affiant. She then submitted the application to the Ohio Division of Liquor Control. Despite her knowledge that the application form would be the basis for granting or denying the application, respondent failed to alert the division to the dubious circumstances surrounding the application.

{¶ 22} Chief Legal Counsel for the division testified that the notarized signature on the application is "[v]ery material" in the determination as to whether to grant or deny an application for a temporary liquor permit. He further stated that if the person notarizing the applicant's signature is an attorney, division personnel "then rely on the fact that the attorney has reviewed [the application] and is in agreement that there are no errors or misrepresentations." The division unwittingly relied on the notarial affirmation submitted by respondent and granted the application.

{¶ 23} Respondent's actions had adverse consequences beyond inducing the division's reliance. An article published in the *Columbus Dispatch* generated public awareness of the alleged involvement of the Congregation Tifereth Israel Men's Club in assisting the Shanghai Lily Restaurant in obtaining a temporary liquor permit. Members of the synagogue's congregation contacted the synagogue to express concern over its apparent sponsorship of an event at the

nonkosher restaurant. The president of the synagogue and the synagogue's board of trustees were required to respond to this publicity. They did so by sending a letter to each congregant, explaining that the synagogue's men's club had not applied for the permit.

{¶ 24} The majority notes that respondent "failed completely" to adhere to our admonishment in *Papcke* that notaries must not take a casual attitude toward their notary responsibilities by notarizing an affiant's signature outside the affiant's presence. Despite this acknowledgment, the majority sanctions respondent by publicly reprimanding her.

{¶ 25} In my view, pursuant to the precedent established in *Fowerbaugh* and *Papcke,* respondent should not receive such a lenient sanction. In light of her casual attitude toward her notary responsibilities and the adverse consequences of her misconduct, respondent should be suspended from the practice of law for six months, with no stay of the suspension.

O'CONNOR and LANZINGER, JJ., concur in the foregoing dissenting opinion.

————————

David K. Greer, Bruce Campbell, Bar Counsel, and Jill Snitcher McQuain, Assistant Bar Counsel, for relator.

Kegler, Brown, Hill & Ritter, Christopher J. Weber, and Geoffrey Stern, for respondent.