COLUMBUS BAR ASSOCIATION *v.* ROSS.

[Cite as *Columbus Bar Assn. v. Ross,*
107 Ohio St.3d 354, 2006-Ohio-5.]

(No. 2005–0750—Submitted August 23, 2005—Decided January 11, 2006.)

**Per Curiam.**

{¶ 1} Respondent, Leo Patrick Ross of Columbus, Ohio, Attorney Registration No. 0031061, was admitted to the practice of law in Ohio in 1975. On December 8, 2003, relator, the Columbus Bar Association, charged respondent with violations of the Code of Professional Responsibility. A panel of the Board of Commissioners on Grievances and Discipline heard the cause and made findings of fact, conclusions of law, and a recommendation, all of which the board adopted.

*Misconduct*

{¶ 2} The allegations of misconduct arose from respondent's defense of James Jeffrey Brown II, in the United States District Court for the Southern District of Ohio. Brown was indicted by a federal grand jury in March 2002 and charged with trafficking cocaine in and around Zanesville, Ohio. The prosecution's case against Brown was based on unnamed informants to whom Brown had supplied cocaine.

{¶ 3} When respondent took Brown's case in May 2002, he was already representing Shawnte Hollins in proceedings stemming from an unrelated drug charge in state court. The United States attorney prosecuting Brown's case inquired about the propriety of this dual representation because she had evidence

that Hollins was Brown's drug supplier in the federal trafficking case. Respondent promised to discuss this allegation and the potential for a conflict of interest with his clients.

{¶ 4} When respondent advised them of the United States attorney's claim, Brown and Hollins, who had been friends since childhood, denied any drug deals. Respondent then asked for the government's evidence that Hollins had supplied drugs to Brown. The United States attorney had no physical evidence but said that a number of conspirators, witnesses she would not name, were available to testify against Hollins. Respondent did not consider that evidence reliable enough to warrant his withdrawal from either Brown's or Hollins's case.

{¶ 5} Respondent's defense strategy called for Brown to plead guilty, cooperate with the government, and, in exchange, have his sentence reduced. Around August 2002, Brown proffered the name of a third person whom he claimed to be his supplier, but the United States attorney did not believe him. Respondent continually asked the United States attorney to move the federal district court to depart from rigid sentencing guidelines and reduce Brown's sentence based on his "substantial assistance" to the government. She refused unless Brown named Hollins as his supplier.

{¶ 6} The United States attorney did, however, ask the federal court to inquire whether Brown and Hollins fully understood and consented to respondent's dual representation. With that motion, the United States attorney hoped to prevent a successful claim of ineffective assistance of counsel if Brown appealed. At the motion hearing, the federal court judge asked about the possible conflict of interest, but Brown assured the court that Hollins had not been his supplier and that he wanted to keep respondent as his lawyer. The court allowed respondent to remain as Brown's counsel.

{¶ 7} In September or October 2002, shortly before Brown's trial date, respondent moved to withdraw as counsel of record because he could not get Brown a reduced sentence. Brown obtained other counsel, pleaded guilty, and agreed to offer incriminating testimony, including that Hollins was his supplier. Brown ultimately received a 15–year reduction in his sentence in exchange for his cooperation. In March 2003, Hollins was also indicted as a conspirator, and respondent continued to represent him until he was removed by another federal district judge.

{¶ 8} By deposition from prison, Brown testified that he had authorized respondent to work out a plea bargain to avoid a trial and a longer sentence. He also said, however, that respondent had advised him not to disclose that Hollins was his supplier to the government. Respondent denied this claim.

{¶ 9} Respondent defended his decision to continue representing Brown and Hollins. He explained to the panel that he had relied on his clients' representa-

tions that Hollins had not been Brown's supplier at a time when the government had no solid evidence that he had been.

{¶ 10} Relator provided testimony from practitioners as to federal standards of criminal-law practice; however, the board did not find clear and convincing evidence that respondent had represented clients with conflicting interests in violation of DR 5–105. DR 5–105(A) and (B) prohibit a lawyer from accepting or continuing to represent clients if the lawyer's professional judgment on any client's behalf is likely to be compromised by the representation. The exception, provided by DR 5–105(C), is when "it is obvious" that the lawyer can adequately represent multiple clients' interests and the clients have consented after full disclosure of the attendant risks.

{¶ 11} The board concluded that respondent's decision to believe Brown and Hollins and continue representing them was not the best choice, but it was defensible inasmuch as respondent had no specific proof that they were involved in criminal activity together. The board further found that respondent had worked conscientiously before his withdrawal until he was sure that he could not get Brown's sentence reduced. Finally, the board noted that Brown had filed the grievance against respondent but that the United States attorney in Brown's case had not complained to relator about the ethical breach Brown alleged.

{¶ 12} For these reasons, the board did not find any violation of DR 5–105. The board also did not find proof of charges that respondent had charged improper fees for his services. Based on respondent's admission, however, the board did find a violation of DR 1–104, which requires lawyers to inform clients if they do not carry professional liability insurance.

### Sanction

{¶ 13} In recommending a sanction for this misconduct, the board weighed the aggravating and mitigating factors of respondent's case. See Section 10 of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg."). As to aggravating factors, the board noted that in 1985, respondent had received a public reprimand for neglect of a client's case. See BCGD Proc.Reg. 10(B)(1)(a).

{¶ 14} In mitigation, the board found that respondent had not acted with a dishonest or selfish motive. Testimonial letters submitted by community leaders and colleagues on respondent's behalf also established his good character and professional reputation. Moreover, although the United States attorney in Brown's case testified to the impropriety of respondent's dual representation, she nevertheless testified favorably on respondent's professionalism.

{¶ 15} Relator urged the board to suspend respondent from the practice of law for one year but conditionally stay the last six months. Respondent argued for dismissal of the complaint. The board recommended, consistent with the panel's report, that respondent be publicly reprimanded for failing to inform his client that he did not have malpractice insurance.

## Review

{¶ 16} Relator objects to the board's finding that respondent did not violate DR 5–105 and argues that this additional misconduct requires a suspension of respondent's license that is stayed on conditions. We sustain relator's objections. In addition to the violation of DR 1–104, we find that respondent also violated DR 5–105(B) by continuing to represent Brown and Hollins after the government identified Hollins as Brown's supplier of drugs. We further find that a six-month suspension of respondent's license, all stayed, is the appropriate sanction.

{¶ 17} As a preliminary matter, however, we also reject respondent's argument that our review is limited to whether he violated DR 1–104 and may not extend to the charged violation of DR 5–105. Respondent cites Gov.Bar R. V(6)(H) and (I), which allow a unanimous hearing panel, if it finds insufficient evidence to support the charged misconduct, to order the dismissal of a disciplinary count or complaint without referring the cause to the board or this court for review. See *Columbus Bar Assn. v. Dougherty*, 105 Ohio St.3d 307, 2005-Ohio-1825, 825 N.E.2d 1094. Here, however, the panel *recommended* dismissal of all charges except the violation of DR 1–104 to the board, and the board certified that entire recommendation to us. The recommendation to dismiss DR 5–105, therefore, is ready for our final determination. *In re Complaint Against Harper* (1996), 77 Ohio St.3d 211, 216, 673 N.E.2d 1253.

### DR 5–105

{¶ 18} DR 5–105 strongly discourages lawyers from representing clients with adverse interests and provides:

{¶ 19} "(A) A lawyer shall decline proffered employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by the acceptance of the proffered employment, except to the extent permitted under DR 5–105(C).

{¶ 20} "(B) A lawyer shall not continue multiple employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by his representation of another client, except to the extent permitted under DR 5–105(C).

{¶ 21} "(C) In the situations covered by DR 5–105(A) and (B), a lawyer may represent multiple clients if *it is obvious* that he can adequately represent the interest of each and if each consents to the representation after full disclosure of

the possible effect of such representation on the exercise of his independent professional judgment on behalf of each." (Emphasis added.)

{¶ 22} Respondent advised Brown to cooperate with authorities and name his supplier to obtain a reduction in sentence. Hollins, however, was the supplier that the government wanted Brown to incriminate, and the government refused to negotiate unless Brown proffered that information. Clearly, respondent could not recommend that Brown inform on Hollins without compromising one client's interests at the expense of another.

{¶ 23} Relator maintains that respondent's judgment was thereby "ineluctably clouded by the fact that the right strategy for one client would necessarily have harmed his other client." Thus, in its best argument, relator claims that the situation presented such a great potential for conflict that it could not be obvious that respondent could represent both clients. Stated differently, even if respondent did disclose the risks of dual representation and did obtain his clients' consent, a waiver that relator disputes, the DR 5–105(C) exception still did not permit respondent to defend both of these clients.

{¶ 24} We agree. Respondent disregarded all cautionary guidance in continuing to represent Brown and Hollins. EC 5–14 admonishes lawyers to eschew all actual and potential conflicts of interest so as not to dilute the lawyer's independent loyalty to each client. Before accepting or continuing to represent multiple clients having potentially differing interest, EC 5–15 warns a lawyer to "weigh carefully the possibility that his judgment may be impaired or his loyalty divided" and to "resolve all doubts against the propriety of the representation" and also declares that "there are few situations in which he would be justified in representing in litigation multiple clients with potentially differing interests." Moreover, Commentary ¶ 23 to Rule 1.7 of the American Bar Association Model Rules of Professional Conduct observes that the potential for conflicts of interest in representing multiple defendants in a criminal case is "so grave that ordinarily a lawyer should decline to represent more than one codefendant."

{¶ 25} In *Disciplinary Counsel v. Mazer* (1999), 86 Ohio St.3d 185, 188, 712 N.E.2d 1246, we relied on the test in DR 5–105(C) and declared it "far from 'obvious' " that the lawyer could adequately represent business partners' divergent interests in overlapping business transactions despite attempts to obtain their consent. We held that " '[a] lawyer should never represent in litigation multiple clients with differing interests' " and that the continued representation of clients with clear and distinct interests is not one of the few situations where multiple representation is permissible. Id. at 188, 712 N.E.2d 1246, quoting EC 5–15. Moreover, regardless of whether an actual conflict of interest is at stake, we held that a *potential* conflict of interest can be sufficient to violate DR 5–105(B). Id.

{¶ 26} The mere representation by one lawyer of two defendants charged with the same offenses does not of itself constitute a conflict of interest; whether a conflict exists must be determined by the facts of each case. *Attorney Grievance Comm. v. Kent* (1995) 337 Md. 361, 379, 653 A.2d 909. A conflict of interest exists, however, "where a single attorney in a criminal case represents both the defendant and the chief witness for the State in the same case." Id. at 380, 653 A.2d 909. Indeed, the availability of "a plea by one defendant in exchange for testimony against the other in the same matter is virtually certain to place lawyers involved in representing both in an untenable position." *People v. Mattison,* 67 N.Y.2d 462, 469–470, 503 N.Y.S.2d 709, 494 N.E.2d 1374.

{¶ 27} When the prosecution asked Brown to incriminate Hollins, a trial or plea negotiations in which their interests were irreconcilable became practically inevitable. Moreover, although the district court may have initially found Brown sophisticated enough to waive the potential conflicts that dual representation presented, another federal district court judge later removed respondent from representing Hollins because he suspected that Hollins, who had been seriously injured in an auto accident, was incapable of providing valid consent. Respondent therefore cannot establish that he was obviously able to adequately continue representing the adverse interests of Brown and Hollins. He therefore violated DR 5–105(B).

*The Appropriate Sanction*

{¶ 28} "In seeking to bring uniformity to the process of sanctioning attorneys, this court turned to the four-step methodology of the American Bar Association Standards for Imposing Lawyer Sanctions in *Disciplinary Counsel v. Brown* (1999), 87 Ohio St.3d 316, 720 N.E.2d 525." *Disciplinary Counsel v. Beeler,* 105 Ohio St.3d 188, 2005-Ohio-1143, 824 N.E.2d 78, ¶ 25. First, we determine which ethical duties were violated. Second, we examine the attorney's mental state at the time of the violations. Third, we assess the extent of the actual or potential injury caused by the lawyer's misconduct. Finally, we consider any aggravating or mitigating circumstances that may shape the appropriate sanction. Id.

{¶ 29} As to the first step, a lawyer's duty to provide undivided loyalty to a client is paramount. But in violating DR 1–104 and 5–105(B), respondent did not protect Brown's and Hollins's individual interests, nor did he candidly disclose his lack of malpractice insurance. Second, respondent's mental state is not an issue. Third, by continuing to represent Brown, respondent delayed his client's cooperation with authorities for months. Finally, as for extenuating circumstances, respondent has a disciplinary history, but it is distant and fairly minor, and he is reputed to be a competent and professional advocate apart from the misconduct at issue.

{¶ 30} Having found respondent in violation of DR 5–105(B) and 1–104, we impose a sanction consistent with relator's current recommendation. Respondent is hereby suspended from the practice of law for six months; however, the six-month suspension is stayed on the condition that respondent commit no further misconduct. If respondent violates the condition of this stay, the stay shall be lifted, and respondent shall serve the entire suspension period. Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., RESNICK, PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL and LANZINGER, JJ., concur.

Terry K. Sherman and Bruce A. Campbell, Bar Counsel, for relator.

Lane, Alton & Horst, L.L.C., and Alvin E. Mathews Jr., for respondent.