**TRUSTEES OF OHIO CARPENTERS' PENSION FUND, Appellant,**

v.

**U.S. BANK NATIONAL ASSOCIATION et al.;**
**Baker & Hostetter, L.L.P., Appellees.**

[Cite as *Trustees of Ohio Carpenters' Pension Fund v. U.S. Bank
Natl. Assn.*, 189 Ohio App.3d 260, 2010-Ohio-911.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 93295.

Decided March 11, 2010.

Rotatori, Bender, Gragel, Stoper, & Alexander Co., Robert J. Rotatori, and Richard L. Stoper Jr., for appellant.

Weisman, Kennedy & Berris Co., L.P.A., and R. Eric Kennedy; Baker & Hostetler, L.L.P., Louis A. Colombo and Karl Fanter, for appellee Baker & Hostetler, L.L.P.

COLLEEN CONWAY COONEY, Judge.

{¶ 1} Plaintiff-appellant, Trustees of the Ohio Carpenters' Pension Fund ("the Fund"), appeals the trial court's granting summary judgment to defendant-appellee, Baker & Hostetler, L.L.P. ("Baker") regarding the Fund's legal-malpractice claim and denying the Fund the opportunity to amend its complaint. Finding no merit to the appeal, we affirm.

{¶ 2} The instant case involves alleged malpractice while Baker represented the Fund in connection with the LaCentre development project. During the relevant time, the Fund lent millions of dollars to another of Baker's clients, Robert Lontkowski, to develop LaCentre in a transaction that the Fund claims caused it to sustain significant financial losses.

{¶ 3} In October 2007, the Fund sued Baker for legal malpractice, breach of fiduciary duty, negligent misrepresentation, and restitution. Baker moved for summary judgment in January 2009. In March 2009, the Fund opposed Baker's motion and moved to amend its complaint to add a fraud claim based on newly acquired evidence. Thereafter, in May 2009, the trial court denied the motion to amend and granted summary judgment as to all of the claims against Baker.

{¶ 4} The Fund now appeals, raising four assignments of error for our review. The first three assignments of error relate to the trial court's grant of summary judgment, and the fourth relates to the trial court's denial of the Fund's motion to amend. In the first and second assignments of error, the Fund alleges that the lower court erred in granting summary judgment because there exist genuine issues of material fact regarding (1) the occurrence of a cognizable event giving rise to a legal-malpractice claim and (2) the date that the Fund and Baker's attorney-client relationship terminated.

{¶ 5} In the third assignment of error, the Fund alleges that the trial court erred in granting summary judgment based upon unauthenticated exhibits and speculative hearsay testimony that violated Civ.R. 56. We overrule this assignment of error because the Fund has not identified the specific exhibits that it claims are inadmissible. App.R. 12(A)(2) and 16(A)(7). Accordingly, we turn to the remaining assignments of error.

## Standard of Review

{¶ 6} Appellate review of summary judgment is de novo. *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241; *Zemcik v. LaPine Truck Sales & Equip. Co.* (1998), 124 Ohio App.3d 581, 585, 706 N.E.2d 860. The Ohio Supreme Court set forth the appropriate test in *Zivich v. Mentor Soccer Club* (1998), 82 Ohio St.3d 367, 369–370, 696 N.E.2d 201, as follows:

> Pursuant to Civ.R. 56, summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor. *Horton v. Harwick Chem. Corp.* (1995), 73 Ohio St.3d 679, 653 N.E.2d 1196, paragraph three of the syllabus. The party moving for summary judgment bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 292–293, 662 N.E.2d 264, 273–274.

{¶ 7} Once the moving party satisfies its burden, the nonmoving party "may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Civ.R. 56(E); *Mootispaw v. Eckstein* (1996), 76 Ohio St.3d 383, 385, 667 N.E.2d 1197. Doubts must be resolved in favor of the nonmoving party. *Murphy v. Reynoldsburg* (1992), 65 Ohio St.3d 356, 358–359, 604 N.E.2d 138.

## Statute of Limitations for Legal–Malpractice Claims

{¶ 8} The Ohio Supreme Court explained the statute of limitations in legal-malpractice actions in *Smith v. Conley*, 109 Ohio St.3d 141, 2006-Ohio-2035, 846 N.E.2d 509, ¶ 4, holding:

> R.C. 2305.11(A) is the statute of limitations for the filing of legal-malpractice claims: "[A]n action for * * * malpractice * * * shall be commenced within one year after the cause of action accrued * * *." "Under R.C. 2305.11(A), an action for legal malpractice accrues and the statute of limitations begins to run when there is a cognizable event whereby the client discovers or should have discovered that his injury was related to his attorney's act or non-act and the client is put on notice of a need to pursue his possible remedies against the attorney or when the attorney-client relationship for that particular transaction or undertaking terminates, whichever occurs later." *Zimmie v. Calfee, Halter & Griswold* (1989), 43 Ohio St.3d 54, 538 N.E.2d 398, syllabus, citing *Omni–Food & Fashion, Inc. v. Smith* (1988), 38 Ohio St.3d 385, 528 N.E.2d 941. *Zimmie* and *Omni–Food* require two factual determinations: (1) When should the client have known that he or she may have an injury caused by his or her attorney? and (2) When did the attorney-client relationship terminate? The latter of these two dates is the date that starts the running of the statute of limitations. *Zimmie*, syllabus; *Omni–Food*, paragraph one of the syllabus.

{¶ 9} In the instant case, the parties entered into a tolling agreement on January 1, 2007, pertaining to all of the claims that were not already barred by the statute of limitations. Because we hold that both the termination date and the cognizable event took place before January 1, 2006, the statute of limitations bars the legal-malpractice claim.

## The Cognizable Event

{¶ 10} A "cognizable event" is an event sufficient to alert a reasonable person that his or her attorney may have committed an improper act and that further investigation is needed. See *Zimmie* at 58, 538 N.E.2d 398; *Halliwell v. Bruner* (Dec. 14, 2000), Cuyahoga App. Nos. 76933 and 77487, 2000 WL 1867398. Thus, the statute of limitations begins to run when the client obtains constructive knowledge of relevant facts. *Flowers v. Walker* (1992), 63 Ohio St.3d 546, 589 N.E.2d 1284.[1]

{¶ 11} In the instant case, we find that several cognizable events occurred before January 1, 2006, which should have alerted the Fund to further investigate Baker's legal services. In January 2000, Lontkowski applied to the Fund's

---

1. Although *Flowers* involves a medical-malpractice action, the discovery rule applies equally to a legal-malpractice claim. *Zimmie.*

Construction Loan Committee ("Committee") for an $8.875 million loan to develop the LaCentre project. The Committee was responsible for investing some of the Fund's assets in commercial and residential real estate projects, and David Strauss, a Baker attorney, was the Committee's legal counsel. It is undisputed that Baker notified the Fund of a conflict of interest in the LaCentre transaction because it represented Lontkowski and related entities. But unbeknownst to the Fund, Strauss worked on the LaCentre transaction on behalf of both Lontkowski and the Fund. Nonetheless, the simple fact that the Fund knew that Baker attorneys represented both Lontkowski and the Fund and that Baker had not obtained written, informed consent from the Fund nor advised the Fund to obtain independent legal counsel should have alerted the Fund of possible impropriety.

{¶ 12} Because it knew of some conflict of interest, the Fund hired Deloitte & Touche ("Deloitte") and Leader Mortgage (now known as U.S. Bank) to conduct the due diligence for the project. In 2001, Lontkowski sought to increase the funding for the LaCentre project to $14.8 million, and the Fund granted the increase. By January 2002, Committee members had become dissatisfied with the LaCentre project generally and Strauss's performance. For example, Paul Dalferro, the Committee's secretary, blamed Strauss for the project's poor performance, in part because of Strauss's connection to Lontkowski. In the January 2002 Committee meeting, the Committee decided to require that all professionals disclose "any vested interest * * * in all present, past, and future loans with the Construction Loan Committee." It also determined that all future loans "MUST be strictly for the benefit of the Carpenters Union."

{¶ 13} By December 2002, the LaCentre project had run out of money and was far from complete. The Committee's meeting minutes of January 2003 reflect that the Committee demanded that Lontkowski explain the reasons for the loan imbalance and directed Deloitte to investigate the matter. Committee members questioned how the project could have failed even though so many professionals, including Baker, Deloitte, Leader Mortgage, and inspecting architect David Fortunato were involved.

{¶ 14} The Fund decided to restructure the LaCentre loan and hired Ulmer & Berne ("Ulmer") as independent counsel to review the entire LaCentre loan process and restructure amendments that Baker proposed. Even though the Fund did not hire Ulmer to investigate legal malpractice, the investigation should have alerted it that Baker may have engaged in questionable legal practices.

{¶ 15} Moreover, the Fund had another source of information regarding Baker's substandard services. In October 2004, LaCentre's former chief financial officer, Jeff Christian, contacted both Ulmer and the Committee directly to advise them that Strauss had engaged in questionable legal practices. Christian informed Alan W. Scheufler, one of the primary Ulmer attorneys working with the

Committee, that he had told Strauss in December 2001 that the LaCentre project was $26 million over budget and that Strauss had not taken any appropriate action. In December 2004, Christian hand-delivered a letter to Roger Newman of the Fund's Administrative Office indicating, in part, that he believed that some things about the LaCentre project were "just not right." In the letter, he stated that he had informed Strauss that the project was over budget and that Lontkowski had been purchasing land and paying debt with the Fund's loan proceeds.

{¶ 16} In light of these facts, we find that several cognizable events occurred before January 1, 2006. Having established that, we now examine when the attorney-client relationship terminated.

### Termination of the Attorney–Client Relationship

{¶ 17} For statute-of-limitations purposes, the attorney-client relationship terminates "when the attorney-client relationship for that *particular transaction* or *undertaking terminates.*" (Emphasis sic.) *Zimmie,* 43 Ohio St.3d 54, 538 N.E.2d 398, at syllabus, citing *Omni–Food,* 38 Ohio St.3d 385, 528 N.E.2d 941. The record clearly demonstrates that Baker and the Fund's relationship terminated with respect to real estate loan transactions before January 1, 2006. The October 2003 Committee meeting minutes show that the Committee selected Ulmer to represent the Fund with respect to real estate loan matters. Thereafter, in June 2004, the Committee instructed Baker to send "their entire files concerning any outstanding loans to Ulmer & Berne." On January 26, 2005, Scheufler wrote to attorney Robert Rotatori, indicating that Ulmer served as legal counsel to the Committee.

{¶ 18} We reject the Fund's claim that the attorney-client relationship continued into 2006 merely because Baker continued to bill the Fund for legal services as late as August 2006. The Fund has not disclosed the type of legal work Baker completed and the dates of service to which the bills correspond. The Fund has not met its burden to demonstrate a genuine issue of material fact exists.

{¶ 19} Based on the foregoing, we find that the attorney-client relationship between Baker and the Fund with respect to real estate loans terminated before January 1, 2006. Accordingly, the trial court properly granted summary judgment after finding that the statute of limitations had expired prior to January 1, 2007.

{¶ 20} The first and second assignments of error are overruled.

### Motion for Leave to Amend the Complaint

{¶ 21} Finally, we turn to the fourth assignment of error, in which the Fund alleges that the trial court erred in denying its motion for leave to amend

its complaint to allege a fraud claim. "When a tribunal is faced with a request for leave to amend a complaint, Civ.R. 15(A) directs it to grant such leave 'freely' and 'when justice so requires.'" *Columbus Bar Assn. v. Dougherty,* 99 Ohio St.3d 147, 2003-Ohio-2672, 789 N.E.2d 621, ¶ 15. We review a trial court's decision to deny leave to amend a complaint for an abuse of discretion. *Wilmington Steel Prods., Inc. v. Cleveland Elec. Illum. Co.* (1991), 60 Ohio St.3d 120, 573 N.E.2d 622. "The term 'abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140.

{¶ 22} In denying the Fund's motion, the trial court held:

The court finds that the new claims which Plaintiff seeks to assert against Defendant Baker & Hostetler LLP are essentially identical to the issues contained in the plaintiff's original complaint. The court interprets the plaintiff's motion for leave to amend its complaint as an attempt to avoid summary judgment, especially considering that the instant motion was filed after briefing was complete on Defendant Baker's motion for summary judgment. Although plaintiff contends that attorney Strauss' conduct fell outside the scope of his representation of Plaintiff, the court does not agree. Plaintiff cannot restyle a claim for legal malpractice as a claim for fraud in order to avoid the application of the statute of limitations.

{¶ 23} We find that the trial court did not abuse its discretion in reaching this conclusion. It is well established that " '[a]n action against one's attorney for damages resulting from the manner in which the attorney represented the client constitutes an action for malpractice within the meaning of R.C. 2305.11, regardless of whether predicated upon contract or tort or whether for indemnification or for direct damages.'" *Leski v. Ricotta,* Cuyahoga App. No. 83600, 2004-Ohio-2860, 2004 WL 1232536, ¶ 10, quoting *Muir v. Hadler Real Estate Mgt. Co.* (1982), 4 Ohio App.3d 89, 90, 4 OBR 170, 446 N.E.2d 820. "Malpractice by any other name still constitutes malpractice." *Muir* at 90. Thus, the Fund cannot seek to extend the statute of limitations by casting its malpractice claim as a fraud claim.

{¶ 24} In the instant case, the gist of the Fund's proposed amended complaint involves actions or omissions taken in the course of Baker's legal representation of the Fund. And " '[i]n Ohio, the applicable statute of limitations is determined not from the form of pleading or procedure, but from the gist of the complaint.'" *Leski,* ¶ 10, quoting *Hibbett v. Cincinnati* (1982), 4 Ohio App.3d 128, 131, 4 OBR 220, 446 N.E.2d 832.

{¶ 25} Moreover, the Fund's motion to amend its complaint was untimely and prejudicial. By the time it moved to amend the complaint, appropriate

individuals had been deposed, dispositive motions had been submitted, and trial was set to begin within seven weeks. As the Ninth District aptly held in *Brown v. FirstEnergy Corp.*, 159 Ohio App.3d 696, 2005-Ohio-712, 825 N.E.2d 206, ¶ 6:

> [A] plaintiff must move to amend under Civ.R. 15(A) in a timely manner. *Johnson v. Norman Malone & Assoc., Inc.* (Dec. 20, 1989), 9th Dist. No. 14142, * * * 1989 WL 154763 [at *5]. See, also, *Peterson [v. Teodosio* (1973), 34 Ohio St.2d 161, 175, 63 O.O.2d 262, 297 N.E.2d 113]. However, "[a]n attempt to amend a complaint following the filing of a motion for summary judgment raises the spectre of prejudice." See *Johnson,* * * * at 10 [1989 WL 154763 at *5].

{¶ 26} Based on the foregoing, we find that the trial court did not abuse its discretion in preventing the Fund from amending its complaint to include a fraud claim. The fourth assignment of error is overruled.

Judgment affirmed.

BLACKMON, P.J., concurs.

DYKE, J., concurs in judgment only.