O’Connor, C.J.
{¶ 1} Respondent, Roger Stephen Kramer of Shaker Heights, Ohio, Attorney Registration No. 0019210, was admitted to the practice of law in Ohio in 1977. On December 14, 2015, the Board of Professional Conduct filed its report recommending that Kramer be suspended from the practice of law in Ohio for one year, with the suspension stayed in its entirety. Relator, disciplinary counsel, requests that we reject the board’s recommendation and instead impose a one-year actual suspension. Kramer requests that any suspension ordered be stayed in its entirety and that the court consider certain issues that “have broad impact on the entire disciplinary system in Ohio.” We adopt the board’s recommendation.
Relevant Background
{¶ 2} In May 2011, the Cuyahoga County Council appointed Kramer, a former prosecutor, to be a hearing officer at the county’s board of revision. As a hearing officer, Kramer was a county employee.
{¶ 3} In May 2013, the Cuyahoga County Office of the Inspector General informed the certified grievance committee of the Cleveland Metropolitan Bar Association (“CMBA”) that an investigation of Kramer had revealed discrepancies between his time sheets and his actual hours worked. The inspector general’s report, dated September 4, 2012, determined that there was “sufficient evidence to establish reasonable grounds to believe” that Kramer violated county rules, regulations, and/or policies regarding his work hours and time sheets by some 129 discrepancies between his timesheet and parking garage records. The report stated that Kramer was aware of the fact that he was paid for work he did not perform and acknowledged that he owed money to Cuyahoga County as a result. The inspector general recommended that the matter be referred to the *426 county executive and human-resources department for potential disciplinary action.
{¶ 4} Prior to the issuance of the inspector general’s report but pending the results of the investigation, Kramer was placed on administrative leave without pay. After release of the report, Kramer resigned from his position at the board of revision on September 14, 2012. In his resignation letter, Kramer denied any violation of law and asserted that a review of the documents provided to his counsel “reveal a net discrepancy of six hours.”
{¶ 5} The committee exercised its discretion and decided not to file a complaint against Kramer. By letter dated October 24, 2013, the committee notified the inspector general of the dismissal, stating, “The Committee believes Mr. Kramer has already been sanctioned by the loss of his employment and that further disciplinary action is not warranted.” The letter also informed the inspector general how to obtain review of the committee’s determination pursuant to Gov.Bar R. V(4)(I)(5) (now Gov.Bar R. V(10)(D)). The inspector general declined to pursue further review.
{¶ 6} Prior to the committee’s dismissal of the grievance, a separate anonymous grievance was submitted to disciplinary counsel. According to disciplinary counsel, the grievance was received on October 17, 2013, and signed by a “citizen and employee of Cuyahoga County.” Neither the inspector general’s grievance to the committee nor the anonymous grievance submitted to disciplinary counsel is included in the record. However, disciplinary counsel described the contents of the grievance as follows:
In the anonymous grievance, the grievant stated that he or she is employed by Cuyahoga County and “fear[s] that my employment might be put in jeopardy by reporting this matter.” Attached to the anonymous grievant’s letter was a copy of the September 4, 2012 Report of Investigation prepared by the Cuyahoga County Agency of Inspector General. In the closing paragraph of his or her grievance, the grievant stated that “I bring this to your attention because I believe it is important to the legal profession and to citizens of Cuyahoga County that misconduct be properly reviewed and appropriate consequences result to insure [sic] integrity in public life and in the legal profession.”
{¶ 7} In November 2013, according to disciplinary counsel, he sent a letter of inquiry to Kramer asking him to reply to the information contained in the inspector general’s report. In response, Kramer’s counsel informed disciplinary counsel that the CMBA had already dismissed a related grievance. After receiving this information, disciplinary counsel requested a copy of the CMBA’s *427 file on Kramer and pursued an investigation that by disciplinary counsel’s description, “significantly exceeded the scope of the Inspector General’s investigation.”
{¶ 8} In December 2014, disciplinary counsel filed a formal complaint with the Board of Commissioners on Grievances and Discipline (now known as the Board of Professional Conduct) alleging that Kramer’s conduct regarding his timekeeping violated the Rules of Professional Conduct—specifically, Prof.Cond.R. 8.4(c) (conduct involving dishonesty, fraud, deceit, or misrepresentation) and 8.4(d) (conduct prejudicial to the administration of justice).
{¶ 9} Kramer answered the complaint and moved to dismiss, arguing that the committee’s dismissal of the prior grievance should be dispositive of the matter. On April 9, 2015, a three-member panel of the board denied the motion to dismiss, concluding that “[w]hile the first grievance filed by the inspector general arises out of the same set of facts and circumstances as the grievance that gave rise to the present complaint, nothing in Gov.Bar R. Y precluded the filing of a separate grievance by a different grievant.” Specifically, the panel found:
CMBA declined to file a complaint based on its view that the allegations were of the nature of an employment dispute and did not determine whether any conduct of [Kramer] constituted a violation of the Rules of Professional Conduct. On the other hand, the Disciplinary Counsel independently investigated a grievance filed by someone other than the Cuyahoga County Inspector General and discovered facts not reviewed or considered by the CMBA.
{¶ 10} In August 2015, the panel held a formal hearing on the complaint. On December 14, 2015, the board considered the matter and adopted the panel’s findings of fact, conclusions of law, and recommendation that Kramer be suspended from the practice of law in Ohio for one year, stayed in its entirety.
{¶ 11} Disciplinary counsel objects to the board’s recommendation and requests an actual suspension of one year. Kramer requests that any suspension be stayed in its entirety and that the court consider addressing issues that he asserts have not been addressed in prior disciplinary decisions. One of these issues is whether a dismissal of a grievance by a certified grievance committee is final if not appealed and, relatedly, whether another disciplinary agency must give the prior dismissal full faith and credit.
Misconduct
{¶ 12} After Kramer had been employed for approximately one year as a board-of-revision hearing officer, his supervisor, who was responsible for approv *428 ing Kramer’s timesheets, was replaced. Kramer’s new supervisor requested that the Cuyahoga County inspector general audit her department based on concerns that her predecessor was too lax and had allowed time theft. The audit revealed two employees who had misreported their time, including Kramer. Specifically, the report revealed 129 discrepancies between Kramer’s parking-garage activity and the times he had reported on his timesheets. The inspector general later testified that Kramer admitted to “lying on [his] timesheet” when she met with Kramer during her investigation. Kramer testified that he “may have” made the admission but could not recall.
{¶ 13} Disciplinary counsel’s investigation covered a broader time period than the inspector general’s report and revealed additional discrepancies in Kramer’s timesheets. His investigation also revealed that Kramer misreported time by reporting nine hours worked when he had worked only eight (but worked through lunch) even though this was a prohibited practice.
{¶ 14} In his testimony, Kramer admitted to timekeeping “inaccuracies” and “mistakes,” including reporting the times he had worked through lunch without first informing his supervisor that he was doing so. Kramer further testified that these inaccuracies and mistakes “were wrong.”
{¶ 15} Ultimately, the panel found that Kramer’s testimony regarding the timekeeping discrepancies was not credible and also found that his conduct “amounted to taking county resources without completing the work.”
Sanction
{¶ 16} The board concluded that Kramer’s failure to acknowledge to the panel the wrongful nature of his conduct dictated a stayed one-year suspension from the practice of law. Disciplinary counsel filed objections to the board’s report in this court, asserting that the overwhelming documentary evidence along with Kramer’s admission of misconduct to the inspector general establish that his testimony, which the board characterized as “not credible,” was false, deceptive, and intended to exculpate himself from discipline. Accordingly, disciplinary counsel asserts, the imposition of a one-year actual suspension from the practice of law is appropriate.
{¶ 17} There can be no dispute that some discipline is warranted here. Kramer violated Prof.Cond.R. 8.4(c) and (d) by knowingly falsifying his public-employee time records. “Lawyers holding public office assume legal responsibilities going beyond those of other citizens. A lawyer’s abuse of public office can suggest an inability to fulfill the professional role of lawyers.” Prof.Cond.R. 8.4, Comment 5. The board’s finding that Kramer failed to acknowledge to the panel the wrongful nature of his conduct, instead claiming ignorance of the timekeeping rules and a lack of culpable intent, is particularly concerning.
*429 {¶ 18} Typically, misconduct involving dishonesty, fraud, deceit, or misrepresentation warrants an actual suspension from the practice of law unless there is significant mitigating evidence to support a departure from that principle. See Disciplinary Counsel v. Potter, 126 Ohio St.3d 50, 2010-Ohio-2521, 930 N.E.2d 307, ¶ 9-11 (absence of a prior disciplinary record, efforts to rectify the consequences of the misconduct, full cooperation in the investigation including self-reporting, and evidence of good character and reputation apart from the charged misconduct sufficient to stay 12-month suspension for violating fiduciary duty as the executor of an estate); Disciplinary Counsel v. Niermeyer, 119 Ohio St.3d 99, 2008-Ohio-3824, 892 N.E.2d 434, ¶ 12-13 (absence of prior misconduct, cooperation in the disciplinary process including self-reporting, acceptance of responsibility for misconduct, and evidence of good character and reputation sufficient to stay 12-month suspension for altering a document to make it appear that it had been timely filed).
{¶ 19} Here, the board found as mitigating factors the absence of a prior disciplinary record, attestations from Kramer’s peers and colleagues regarding his good character, and imposition of other penalties or sanctions—namely, Kramer’s forced resignation. See Gov.Bar R. V(13)(C)(1), (5), and (6). In addition, the board noted Kramer’s willing participation in the disciplinary process. See Gov.Bar R. (V)(13)(C)(4).
{¶ 20} As aggravating factors in this case, the board found the presence of a dishonest or selfish motive, a pattern of misconduct, multiple offenses, and Kramer’s refusal to acknowledge to the panel the wrongful nature of his misconduct. See Gov.Bar R. V(13)(B)(2), (3), (4), and (7). Although the board found that Kramer’s testimony about his timekeeping was not credible, the board did not find that it was “false and deceptive” as disciplinary counsel contends. And although Kramer’s misconduct was repetitive, it was limited to his timekeeping practice. Finally, despite Kramer’s characterization of his misconduct as “mistakes” and as “[sjloppy bookkeeping,” he has recognized that the misreporting of his time was wrong. Consideration of these factors persuades us that Kramer is unlikely to commit future misconduct. And the primary purpose of the disciplinary process is to protect the public. Ohio State Bar Assn. v. Weaver, 41 Ohio St.2d 97, 100, 322 N.E.2d 665 (1975).
{¶ 21} Thus, we conclude that the board’s recommendation of a one-year suspension, fully stayed, is warranted here.
Rulemaking and the Dismissal of a Grievance
{¶ 22} Initially, Kramer requests that the court determine whether a dismissal by a certified grievance committee that is not appealed by the grievant should become final and be given full faith and credit by another disciplinary agency. In other words, Kramer asks this court to address whether disciplinary counsel had *430 the authority to investigate and pursue disciplinary action on the separate, anonymous grievance.
{¶ 23} Article IV, Section 5 of the Ohio Constitution states that the Supreme Court “shall make rules governing the admission to the practice of law and discipline of persons so admitted.” Article IV, Section 5(B). “We have previously held that the foregoing constitutional provision! ] grant[s] plenary rulemaking authority to the Supreme Court, which authority is necessary for a uniform, effective governance of the practice of law in this state.” Melling v. Stralka, 12 Ohio St.3d 105, 106, 465 N.E.2d 857 (1984).
{¶ 24} Under that authority, this court has promulgated the Rules for the Government of the Bar of Ohio, including Rule V, which sets forth the disciplinary procedure governing the practice of law. Gov.Bar R. V(2)(A) describes the exclusive jurisdiction of the Board of Professional Conduct regarding grievances alleging attorney misconduct:
Section 2. Jurisdiction and powers of the board
(A) Exclusive jurisdiction. Except as otherwise expressly provided in rules adopted by the Supreme Court, all grievances involving alleged misconduct by judicial officers or attorneys, * * * proceedings for the discipline of judicial officers, attorneys, persons under suspension or on probation, and proceedings for the reinstatement to the practice of law shall be brought, conducted, and disposed of in accordance with the provisions of this rule.
(Boldface sic; emphasis added.) The rules provide that the board shall appoint a disciplinary counsel, who, among other duties, investigates allegations of misconduct.
Gov.Bar R. V(4)(A). Thus, if we were to find that a limitation on disciplinary counsel’s authority to investigate a grievance exists, that limitation must be “expressly provided” by the rules the court has promulgated. If it is not, the limitation is one that must be introduced and vetted through the rulemaking process, not made by judicial declaration.
{¶ 25} Gov.Bar R. V(5)(B) provides that a board-certified grievance committee of any local bar association can investigate misconduct by an attorney in the geographic area served by that association. Gov.Bar R. V(9)(C)(1) further provides as follows:
The Office of Disciplinary Counsel or a certified grievance committee shall review and may investigate a grievance that alleges facts that, if substantiated, would constitute misconduct by a judicial officer or attorney * * *.
*431 The Office of Disciplinary Counsel and a certified grievance committee shall review and may investigate any matter filed with it or that comes to its attention * * *.
(Emphasis added.) In other words, disciplinary counsel and the certified grievance committees each enjoy broad authority to review and investigate any grievance that comes to his or their attention.
{¶26} Pursuant to that authority, both disciplinary counsel and a certified grievance committee may exercise discretion to dismiss an allegation of misconduct, Gov.Bar R. V(9)(C)(2), or pursue disciplinary action via a complaint, Gov.Bar R. V(9)(C)(1). If a certified grievance committee determines that a complaint is not warranted, a grievant who is dissatisfied with that determination “may secure a review of the determination by filing a written request with the director of the Board within fourteen days after the grievant is notified of the determination.” Gov.Bar R. V(10)(D).
{¶ 27} In short, if a grievance investigation does not result in a formal disciplinary proceeding against the attorney, the rules specifically provide an appeal procedure for the grievant. However, the existence of an appeal process has no bearing on the initial investigation of a grievance, and no language limits the investigation as long as the grievance alleges facts that, if substantiated, would constitute attorney misconduct.
{¶ 28} Regardless of whether the grievances against Kramer alleged the same misconduct, nothing in the rules currently limits the authority of disciplinary counsel to investigate a grievance that alleges attorney misconduct. To the contrary, Gov.Bar R. V(9)(C) specifically requires disciplinary counsel to review any matter that comes before it and authorizes it to investigate any matter.
{¶ 29} The dissent erroneously states that “[b]y implication, the lead opinion asserts that this court must allow multiple proceedings in connection with the same alleged misconduct involving the same victim unless and until a new rule is adopted.” Dissenting opinion at ¶ 51. The dissent also states that “[p]ursuant to the lead opinion, taken to its logical conclusion, a grievance would never achieve finality.” Id. at ¶ 52. By these statements, the dissent attempts to obfuscate our straightforward analysis. This reading of our decision is based on the dissent’s own misinterpretation of the term “grievance” and its refusal to recognize the existence of multiple grievances here.
{¶ 30} Indeed, the dissent’s distortion of our decision is based on a miseharac-terization of the facts and the rules. Quite simply, nothing in the rules precludes disciplinary counsel’s review and investigation of the second grievance that led to the board’s disciplinary recommendation in this case. Kramer and the dissenting justices essentially request that the Rules for the Government of the Bar be *432 revised. To do so, the court must follow its rulemaking procedures pursuant to its constitutional authority to “make rules governing the admission to the practice of law and discipline of persons so admitted.” Ohio Constitution, Article IV, Section 5(B). And any change would not affect our decision today, which is decided based on the current status of the rules.
,{¶ 31} Although the Ohio Constitution does not require legislative review of rules governing the discipline of attorneys, we follow a rulemaking procedure to promulgate new and amend existing Rules for the Government of the Bar. This process includes public notice, time for public comment and input from stakeholders such as interested committees or task forces, and a process for the justices to consider public comments received and proposed changes before final approval.
{¶ 32} Should the members of the bench and bar determine it prudent to pursue a rule or rule amendment regarding the finality of a grievance investigation when multiple grievances are submitted regarding attorney or judicial misconduct, such a change should proceed through this court’s rulemaking process. Any change to the rules—and particularly those (like that which Kramer and the dissenting justices request) that are of great import to the public—should not be done without completing our longstanding process.
{¶ 33} Lawyers on the “qui vive” pursuant to the dissent’s cry are no doubt aware that judicial decision-making based on the current status of the rules is required for the uniformity, consistency, and predictability that are hallmarks of an independent judiciary. The dissent attempts to frame its indefensible stand as an interpretation of the rules, but it reads into the rules a limitation that does not exist. The dissent’s approach circumvents the stability inherent in the consistent application of the Rules of Professional Conduct on a case-by-case basis. This does our profession no good.
{¶ 34} Because the rules, as they exist today, do not restrict disciplinary counsel’s authority to investigate the anonymous grievance that is the basis of this disciplinary action, nothing precludes the imposition of the board-recommended sanction here.
Conclusion
{¶ 35} For these reasons, we find against relator and adopt the recommendation of the board. Accordingly, Roger Stephen Kramer is suspended from the practice of law in Ohio for one year, with the suspension stayed in its entirety on the condition that he engage in no further misconduct. If Kramer fails to comply with the condition of the stay, the stay will be lifted and he will serve the entire one-year suspension. Costs are taxed to Kramer.
Judgment accordingly.
*433 Lanzinger and O’Neill, JJ., concur.
French, J., concurs in judgment only.
Kennedy, J., dissents, with an opinion joined by Pfeifer and O’Donnell, JJ.