**[This opinion has been published in *Ohio Official Reports* at 77 Ohio St.3d 433.]**

OFFICE OF DISCIPLINARY COUNSEL V. KOURY.

[Cite as *Disciplinary Counsel v. Koury*, 1997-Ohio-91.]

*Attorneys at law—Misconduct—Indefinite suspension—Continuing to practice law while under suspension.*

(No. 96-2427--Submitted December 11, 1996--Decided February 19, 1997.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 94-53.

_____

{¶ 1} On April 3, 1995, the Office of Disciplinary Counsel of the Supreme Court, relator, in an amended complaint, charged Anthony T. Koury of Youngstown, Ohio, Attorney Registration No. 0030901, respondent, in sixteen counts with violating five Disciplinary Rules and two Rules for the Government of the bar. Respondent filed an answer which admitted many of the allegations of the complaint, denied others, and set forth mitigating circumstances. The parties entered into stipulations, wherein relator withdrew Counts II and IV.

{¶ 2} After receiving testimony including the stipulation of the parties, a panel of the Board of Commissioners on Grievances and Discipline of the Supreme Court ("board") found, with respect to Count I of the amended complaint, that in 1991, respondent, after having filed a lawsuit on behalf of D. Mark and Patricia Clawges, failed to respond to the defendant's counterclaim, and failed to appear at the hearing before a referee. As a result, the referee recommended a judgment against the Clawgeses. Respondent did not object to the referee's report, or respond to the defendant's motion for attorney fees, or appeal the resulting judgment. On the basis of these facts, the panel found that respondent had violated DR 1-102(A)(5) (engaging in conduct prejudicial to the administration of justice), 1-102(A)(6) (engaging in conduct that adversely reflects upon his fitness to practice

law), 6-101(A)(3) (neglecting a legal matter entrusted to him), and 7-101(A)(3) (prejudicing or damaging his client).

**{¶ 3}** In considering the charges under Count III, the panel found that in 1992, Debbie Broll hired respondent to establish a guardianship to ensure payment of the financial obligations of Eva May Daniels. A conflict developed between Broll and one of respondent's employees, and respondent did not file an application for the guardianship until May 25, 1993. On the basis of these facts, the panel found that respondent had violated DR 5-101(A) (accepting or continuing employment where professional judgment on behalf of his client may be affected by business or personal interests), 6-101(A)(3), and 7-101(A)(3).

**{¶ 4}** The panel noted in connection with relator's charges in Counts V through XVI that this court indefinitely suspended respondent from the practice of law on December 10, 1993, for failing to pay the costs of a disciplinary proceeding in which he was publicly reprimanded (*Mahoning Cty. Bar Assn. v. Koury* [1993], 66 Ohio St. 3d 254, 611 N.E.2d 814). The panel found that with respect to Count V respondent had violated Gov.Bar R. V(8)(E) (duties of a disbarred or suspended attorney) and DR 3-101(B)(practicing law in a jurisdiction where such practice violates professional regulations) when, without informing the client who had hired him before his suspension, he prepared for trial, met with witnesses, and appeared in court on April 15, 1994 on behalf of the minor child of Robert Ross.

**{¶ 5}** With respect to Counts VI through XVI, the panel found that in each of the following instances respondent not only violated Gov.Bar R. V(8)(E) and DR 3-101(B), but also DR 1-102(A)(5). In February 1994, respondent received $500 in legal fees from a client, Rosaliea Santiago, to represent her in a divorce action. Four months later he notified Santiago of his suspension, causing her to appear unrepresented at her final divorce hearing. Respondent failed to notify another client, Floyd Sims, about his suspension and did not file a notice of his suspension in the court in which he was defending Sims on a criminal charge.

Moreover, three months after his suspension, respondent accepted $65 to prepare a quitclaim deed for Sims and his spouse.

{¶ 6} After his client Jesse Shields, Jr. retained him to represent Shields in a divorce proceeding, respondent neither advised Shields of his suspension nor appeared at Shields's final divorce hearing. In February and March 1994, respondent received a total of $575 to represent client Jose Rodriguez in a hearing before the Immigration and Naturalization Service. In June 1994, respondent accepted a $100 retainer from Charlene Patrick to represent her in a child custody matter. In March 1994, respondent agreed to represent Christine McKelvey in a dissolution proceeding without informing her of his suspension. He also accepted a $100 filing fee from McKelvey, but never filed any documents. In March and May 1994, respondent received a total of $1,000 in legal fees from Edward Maloof to represent him in a criminal matter.

{¶ 7} In May 1994, respondent received $250 in legal fees to represent Angela Carmendy in a child support and visitation matter. In April 1994, respondent undertook to represent Sharon Davis in a dissolution proceeding and during the case collected $900 in legal fees from her. Prior to his suspension, respondent was retained by Michael C. Galose, M.D., to collect funds owed to Dr. Galose's medical practice. In April 1994, respondent received $540 in court costs to pursue eighteen collection accounts for Dr. Galose. Finally, in March 1994, respondent undertook to represent Patricia A. Stilson in a custody matter, but arranged for substitute counsel to appear at the hearings.

{¶ 8} In mitigation, the respondent indicated that from 1991 through 1994, he suffered what the panel recognized was "a number of personal reversals, bad luck and outrageous fortune." In 1991, he injured his back in an automobile accident; in 1992, his mother suffered a stroke and he became one of her caregivers; in 1993, his godmother, to whom he was very close, died; in December 1993, his son was born prematurely and the child had serious lung and heart problems.

During 1994, he was diagnosed as having diabetes, he separated from his wife, and he began seeing a psychiatrist for mental and stress-related problems. In further mitigation, respondent represented that he returned the fees he had received from seven clients while under suspension; however, as of the hearing date, respondent had not repaid the fees received from eight other clients.

{¶ 9} The panel recommended that respondent be indefinitely suspended from the practice of law, but that he be permitted to apply for readmission after July 1, 1997 upon proof that he had paid his disciplinary costs and made full restitution to all his clients. The board adopted the findings and conclusions of the panel, and recommended that the respondent be indefinitely suspended from the practice of law effective November 1, 1995.

_____

*Geoffrey Stern*, Disciplinary Counsel, and *Alvin E. Mathews*, Assistant Disciplinary Counsel, for relator.

*Orville E. Stifel II*, for respondent.

_____

***Per Curiam.***

{¶ 10} Under Gov Bar. R. V(8)(E), an attorney must inform existing clients of his suspension, notify them to seek legal services elsewhere, notify opposing counsel of the suspension, and file a notice of disqualification with any court where he has litigation pending. These duties were specifically set forth in our order of December 10, 1993. That order also provided that "respondent [shall] immediately cease and desist from the practice of law in any form" and that "on or before January 10, 1994, respondent [shall] surrender his certificate of admission to practice to the Clerk of this court and that his name be stricken from the roll of attorneys maintained by this court."

{¶ 11} After the December 10, 1993 order, respondent continued to represent clients Ross and Sims and did not inform them of his suspension.

Moreover, while suspended, he undertook to represent clients Santiago, Shields, Rodriguez, Patrick, McKelvey, Carmendy, Maloof, Davis, Galose, and Stilson.

{¶ 12} The normal penalty for continuing to practice law while under suspension is disbarment. *Akron Bar Assn. v. Thorpe* (1988), 40 Ohio St.3d 174, 532 N.E.2d 752; *Disciplinary Counsel v. McDonald* (1995), 71 Ohio St.3d 628, 646 N.E.2d 819; *Cincinnati Bar Assn v. Shabazz* (1995), 74 Ohio St.3d 24, 656 N.E.2d 325. However, in view of the board's recommendation and the mitigating circumstances, respondent is indefinitely suspended from the practice of law in Ohio with the suspension to commence as of the date of our order. Costs taxed to respondent.

*Judgment accordingly*.

MOYER, C.J., RESNICK, F.E. SWEENEY and PFEIFER, JJ., concur.

DOUGLAS, J., dissents.

COOK and LUNDBERG STRATTON, JJ., separately dissent.

————————————

**COOK, J., dissenting.**

{¶ 13} The appropriate sanction for the continued practice of law while under suspension is permanent disbarment. I would impose it here.

LUNDBERG STRATTON, J., concurs in the foregoing dissenting opinion.

————————————