DISCIPLINARY COUNSEL *v.* TROLLER.

[Cite as *Disciplinary Counsel v. Troller,* **138 Ohio St.3d 307, 2014-Ohio-60.**]

*Attorney misconduct, including continuing to practice law while under suspension—Two-year suspension, with six months stayed on conditions.*

(No. 2013-0572—Submitted June 5, 2013—Decided January 14, 2014.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 12-057.

_____

**Per Curiam**.

{¶ 1} Respondent, David Edward Troller of Mason, Ohio, Attorney Registration No. 0013296, was admitted to the practice of law in Ohio in 1984. On December 2, 2005, we suspended him for his failure to register for the 2005-2007 biennium. *In re Attorney Registration Suspension of Troller*, 107 Ohio St.3d 1431, 2005-Ohio-6408, 838 N.E.2d 671 ("*Troller I*"). And on May 16, 2006, we suspended him for his failure to meet the continuing-legal-education ("CLE") requirements of Gov.Bar R. X. *In re Continuing Legal Edn. Suspension of Troller*, 109 Ohio St.3d 1464, 2006-Ohio-2403, 847 N.E.2d 443 ("*Troller II*"). These suspensions remain in effect.

{¶ 2} In July 2012, relator, disciplinary counsel, charged Troller with violations of the Disciplinary Rules of the Code of Professional Responsibility, the Rules of Professional Conduct,[1] and the Rules for the Government of the Bar of Ohio for failing to comply with the duties of a suspended attorney, continuing

_____

1. Relator charged respondent with misconduct under the applicable rules for acts occurring before and after February 1, 2007, the effective date of the Rules of Professional Conduct, which supersede the Disciplinary Rules of the Code of Professional Responsibility. Although both the former and current rules are cited for the same acts, the allegations comprise a single continuing ethical violation.

to practice law while his license was under suspension, and engaging in conduct that adversely reflects on his fitness to practice law. A probable-cause panel of the Board of Commissioners on Grievances and Discipline found that probable cause existed and certified the complaint to the full board on August 6, 2012.

{¶ 3} The parties entered into joint stipulations of fact, misconduct, and aggravating and mitigating factors and submitted eight stipulated exhibits. Based on the parties' stipulations of fact and misconduct, Troller's testimony, and additional evidence submitted at the hearing, the panel found that by continuing to perform his job duties as the chief legal officer for Clopay Corporation, Troller continued to practice law for six years after his license was suspended by this court. The parties also jointly recommended that Troller be suspended from the practice of law for two years, with six months stayed on conditions. The panel adopted the stipulated sanction but added one additional condition. The board adopted the findings of fact, conclusions of law, and recommended sanction of the panel, and no objections have been filed to the board's report. We agree that Troller committed the charged misconduct and adopt the sanction recommended by the board.

## Misconduct

{¶ 4} Troller was hired by the Clopay Corporation as senior corporate counsel in 1999 and had no other clients during his employment. From April 2002 to April 2012, he served as the chief legal officer and secretary of the company and used the title "chief legal officer" on his stationery and business cards. A January 16, 2012 document signed by Clopay's board of directors designates Troller as vice president and secretary—deleting the board's earlier reference to him as chief legal counsel—but Troller testified that he held the title of chief legal officer until April 2012.

{¶ 5} Troller failed to register as an attorney for the 2005-2007 biennium. Consequently, we suspended his license to practice law on December

2, 2005. *See Troller I.* The order of suspension prohibited him from giving legal advice or counsel, preparing legal instruments for others, or in any manner performing legal services for others. *Id.*; Gov.Bar R. VI(6)(C). On May 16, 2006, we imposed a second suspension for his failure to comply with CLE requirements for the 2003-2004 reporting period and his failure to comply with a previously ordered monetary sanction for his noncompliance in the 2001-2002 reporting period. *See Troller II*; Gov.Bar R. X(5)(A)(4) and (6)(B). To date, Troller has not been reinstated to the practice of law.

{¶ 6} Although Troller never signed pleadings or appeared in court proceedings on behalf of Clopay, the parties have stipulated that after he was suspended, he held himself out as being authorized to practice law and actually engaged in the practice of law in at least three respects: (1) working with outside counsel on pending litigation matters, (2) negotiating and drafting contracts on behalf of the company, and (3) advising human-resources personnel regarding the termination of employees. During his cross-examination at the panel hearing, Troller was hesitant to admit that his work constituted the practice of law, but on further questioning, he admitted that he had been practicing law.

{¶ 7} Troller stipulated that during his suspension (and while he continued to hold himself out as chief legal counsel), he hired and managed outside legal counsel, talked to counsel about the progress of cases, discussed how to proceed, challenged outside counsel's plans, and helped the company decide how to resolve cases. He admitted that he and the company's outside counsel discussed discovery proceedings, issues that arose with answers or complaints that were to be filed in court, depositions, and settlements. He also testified that he had managed the company's legal-department employees. In 2006 and 2007, Troller supervised another attorney who was a full-time employee of the corporation. Together they managed the corporation's contracts, human-

resources, and litigation issues. And from 2009 to 2012, he worked on the company's legal issues with a part-time attorney who served as outside counsel.

{¶ 8} Troller also stipulated that his job duties included assisting with human-resources issues and testified that he had probably given legal advice regarding employee terminations and the risk that the company might be sued for wrongful discharge based on an employee's age or health. Significantly, Troller admitted that negotiating and drafting contracts constituted 25 percent of his work for Clopay.

{¶ 9} The panel and board found that Troller had continued to practice law following the suspension of his license and that this conduct violated DR 1-102(A)(6) and Prof.Cond.R. 8.4(h) (prohibiting a lawyer from engaging in conduct that adversely reflects on the lawyer's fitness to practice law), DR 3-101(B) and Prof.Cond.R. 5.5(a) (prohibiting a lawyer from practicing law in a jurisdiction in violation of the regulation of the legal profession in that jurisdiction), and Gov.Bar R. VI(5)(C) (prohibiting an attorney who has been suspended from the practice of law for a registration violation from practicing law or holding himself out as authorized to practice law in Ohio). We adopt these findings of fact and misconduct.

### Sanction

{¶ 10} When imposing sanctions for attorney misconduct, we consider all relevant factors, including the ethical duties that the lawyer violated and the sanctions imposed in similar cases. *Stark Cty. Bar Assn. v. Buttacavoli*, 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16. In making a final determination, we also weigh evidence of the aggravating and mitigating factors listed in BCGD Proc.Reg. 10(B). *Disciplinary Counsel v. Broeren,* 115 Ohio St.3d 473, 2007-Ohio-5251, 875 N.E.2d 935, ¶ 21.

{¶ 11} As aggravating factors, the parties have stipulated and the panel and board have found that Troller's registration suspension is a prior disciplinary

offense and that he engaged in a pattern of misconduct involving multiple offenses. *See* BCGD Proc.Reg. 10(B)(1)(a), (c), and (d). Mitigating factors include his good-faith effort to rectify his conduct by ceasing his use of the title "chief legal officer" and avoiding giving any legal advice or engaging in acts that would constitute the practice of law in his work (once relator initiated its investigation) and his full cooperation in the disciplinary process. *See* BCGD Proc.Reg. 10(B)(2)(d). The parties and the panel and board also note that Troller is an active member of his church and community and has a long history of engaging in charitable endeavors including participating in posthurricane rescue and recovery efforts in New Orleans and Haiti and serving as a volunteer firefighter. *See* BCGD Proc.Reg. 10(B)(2)(e). Although Troller testified that he had signed a contract with the Ohio Lawyers Assistance Program ("OLAP") and that he has been receiving treatment for anxiety, he did not submit a status report from OLAP or his treating professionals and did not establish a diagnosed mental disability as a mitigating factor in accordance with BCGD Proc.Reg. 10(B)(2)(g).

{¶ 12} The panel adopted the parties' stipulated sanction of a two-year suspension with six months stayed on the conditions that (1) Troller extend his OLAP contract for two and a half years beyond the date of this court's final order in this matter and remain in compliance with its terms, (2) he satisfy his outstanding CLE obligation, and (3) in conjunction with any application for reinstatement, he submit a letter from OLAP or a qualified mental-health professional approved by OLAP stating that he is capable of returning to the competent, ethical, and professional practice of law. The panel also recommended that Troller be required to pay the applicable attorney-registration fees for the 2005-2007 biennium and each subsequent biennium during which he practiced law without a license.

{¶ 13} In support of its recommended sanction, the panel cited several cases in which we have diverged from the normal penalty of permanent

disbarment for attorneys who have continued to practice law during a license suspension. *See Disciplinary Counsel v. Koury*, 77 Ohio St.3d 433, 436, 674 N.E.2d 1371 (1997) ("The normal penalty for continuing to practice law while under suspension is disbarment"); *Disciplinary Counsel v. Bancsi*, 79 Ohio St.3d 392, 683 N.E.2d 1072 (1997) (imposing a one-year suspension with six months stayed on an attorney who continued to practice law for five weeks during a CLE suspension); *Disciplinary Counsel v. Blackwell*, 79 Ohio St.3d 395, 683 N.E.2d 1074 (1997) (imposing a two-year suspension with the second year stayed on an attorney who continued to practice law for 15 months while his license was suspended for failing to meet CLE requirements and failing to maintain a current certificate of registration); *Disciplinary Counsel v. Seabrook*, 133 Ohio St.3d 97, 2012-Ohio-3933, 975 N.E.2d 1013 (imposing a two-year suspension with the second year stayed on conditions on an attorney who continued to practice law during a three-month license suspension and initially failed to cooperate in the resulting disciplinary investigation); and *Disciplinary Counsel v. Carson*, 93 Ohio St.3d 137, 753 N.E.2d 172 (2001) (imposing a two-year suspension with the second year stayed on an attorney who was suspended from the practice of law for his failure to pay fines associated with a CLE deficiency and continued to practice law during his seven-year suspension).

{¶ 14} The board adopted the panel's recommended sanction in this case.

{¶ 15} We are mindful that the primary purpose of the disciplinary process is not to punish the offender but to protect the public from lawyers who are unworthy of the trust and confidence essential to the attorney-client relationship. *Disciplinary Counsel v. Agopian*, 112 Ohio St.3d 103, 2006-Ohio-6510, 858 N.E.2d 368, ¶ 10. *Accord Disciplinary Counsel v. O'Neill*, 103 Ohio St.3d 204, 2004-Ohio-4704, 815 N.E.2d 286, ¶ 53; *Disciplinary Counsel v. Fumich*, 116 Ohio St.3d 257, 2007-Ohio-6040, 878 N.E.2d 6, ¶ 17; and *Ohio State Bar Assn. v. Weaver*, 41 Ohio St.2d 97, 100, 322 N.E.2d 665 (1975).

**{¶ 16}** Given the limited nature of Troller's practice during his CLE and registration suspensions, his cooperation throughout the disciplinary process, his willingness to stipulate to the alleged misconduct, and the additional mitigating factors cited by the board, we find that Troller does not pose a great risk to the public going forward. Therefore, we agree that a two-year suspension with six months stayed on conditions is the appropriate sanction for Troller's misconduct.

**{¶ 17}** Accordingly, David Edward Troller is suspended from the practice of law in Ohio for two years, with six months stayed on the conditions that he (1) extend his OLAP contract for two and a half years beyond the date of this court's final order in this matter and remain in compliance with its terms, (2) within 30 days of the date of this order, pay the applicable attorney-registration fees for the 2005-2007 biennium and the three subsequent bienniums during which he practiced law without a license, and (3) engage in no further misconduct. On applying for reinstatement to the practice of law, he must, in addition to demonstrating that he has satisfied the general requirements of Gov.Bar R. V(10)(A), submit a letter from OLAP or a qualified mental-health professional approved by OLAP stating that he is capable of returning to the competent, ethical, and professional practice of law. Costs are taxed to Troller.

Judgment accordingly.

PFEIFER, LANZINGER, KENNEDY, and O'NEILL, JJ., concur.

O'CONNOR, C.J., and O'DONNELL and FRENCH, JJ., dissent and would impose a two-year actual suspension from the practice of law.

_____

Robert R. Berger, Senior Assistant Disciplinary Counsel, and Donald M. Scheetz, Assistant Disciplinary Counsel, for relator.

Ulmer & Berne, L.L.P., Melissa Zujkowski, and Isaac Schulz, for respondent.

_____