Per Curiam.
*185 {¶ 1} Respondent, Brian Allan Maciak of Jupiter, Florida, Attorney Registration No. 0072793, was admitted to the practice of law in Ohio in 2000.
*186 {¶ 2} On December 3, 2007, we suspended Maciak from the practice of law for his failure to register as an attorney for the 2007 to 2009 biennium. In re Attorney Registration Suspension of Maciak , 116 Ohio St.3d 1420, 2007-Ohio-6463, 877 N.E.2d 305. We reinstated his license on January 24, 2008. In re Reinstatement of Maciak , 117 Ohio St.3d 1443, 2008-Ohio-1397, 883 N.E.2d 463. On December 23, 2009, we imposed a $320 sanction on Maciak for his failure to complete the requisite hours of continuing legal education ("CLE") required by Gov.Bar R. X(3), to timely file his reporting transcript, and to timely bring himself into compliance. In re Continuing Legal Edn. Sanction of Maciak , 124 Ohio St.3d 1402, 2009-Ohio-6833, 918 N.E.2d 1010. And on December 29, 2011, we fined Maciak an additional $680 and suspended his license for his failure to complete the requisite hours of CLE, to timely file his final reporting transcript, and to comply with the prior sanction issued by the CLE commission.
*487 In re Continuing Legal Edn. Suspension of Maciak , 130 Ohio St.3d 1505, 2011-Ohio-6770, 959 N.E.2d 2. That suspension remained in effect until November 25, 2015.
{¶ 3} On September 8, 2016, relator, disciplinary counsel, charged Maciak with multiple acts of misconduct arising from his employment as general counsel of corporations in Texas and Florida. The charges include allegations that Maciak engaged in the unauthorized practice of law ("UPL") in Texas and Florida, violated the terms of his 2011 Ohio CLE suspension, and made false statements to relator.
{¶ 4} The parties submitted some stipulations of fact and misconduct, and a panel of the board conducted a three-day hearing at which it heard testimony from Maciak and 11 other witnesses. In its report, the panel found that Maciak committed just two of the charged ethical violations: he engaged in UPL in Florida before obtaining the proper certification from that state, and he engaged in conduct that adversely reflected on his fitness to practice by continuing to practice law during his CLE suspension. The panel unanimously dismissed the remaining 12 alleged violations and recommended that Maciak be suspended from the practice of law for one year, with six months stayed on conditions.
{¶ 5} The board adopted the panel's findings of fact and conclusions of law but recommended that we suspend Maciak from the practice of law for two years, with the entire suspension stayed on conditions. Relator objects and urges us not only to reject the panel's dismissal of two alleged violations but also to impose an unstayed suspension from the practice of law. For the reasons that follow, we overrule relator's objections, adopt the board's findings of fact and conclusions of law, and suspend Maciak from the practice of law for two years, with the entire suspension stayed on the conditions recommended by the board.
Misconduct
{¶ 6} Maciak accepted a position as general counsel for Florida-based TBC Retail Group in April 2009. He was promoted in June 2012 to the position of *187 senior vice president, general counsel, and secretary of TBC Corporation ("TBC"), the multinational, multibillion-dollar parent company of TBC Retail Group.
Florida Bar Investigation
{¶ 7} In February 2015, Maciak received a letter from Jeffrey Picker, counsel for the Unauthorized Practice of Law Department of the Florida Bar, regarding a complaint filed by a former TBC employee. Picker informed Maciak that in order to serve as general counsel of a business organization in Florida, one must either be a member of the Florida Bar or certified as Authorized House Counsel ("AHC").[1] Picker noted that Maciak was neither admitted to nor certified as AHC by the Florida Bar and asked Maciak how he proposed to resolve his UPL. He also advised Maciak that he was not permitted to hold himself out as a lawyer in Florida, practice law, or represent TBC in the resolution of a legal matter until he obtained the proper licensure or certification.
{¶ 8} Over the next several months, Picker and Maciak communicated by e-mail, letter, and telephone. Maciak maintained that the primary focus of his job was what he considered to be business *488 matters, but he did not dispute that he periodically provided legal advice and counsel to TBC. At Picker's insistence, Maciak deleted the title of general counsel from his biography on TBC's website and agreed to submit an application for AHC certification-though he did not alter his activities. After the Supreme Court of Florida granted Maciak AHC certification in December 2015, the Florida Bar closed its investigation into his UPL.
Ohio Disciplinary Proceedings
{¶ 9} Relator's investigation began in October 2015, with a grievance filed by the same former TBC employee who had reported Maciak's conduct to the Florida Bar. The former employee alleged that Maciak was practicing law in Florida without the proper licensure or certification. Noting that Maciak had been ineligible to practice law in Ohio since December 29, 2011, relator sought information about his activities. Maciak responded to three separate letters from relator, answered 114 questions in writing, provided several binders of documents, and traveled to Ohio from Florida to give a deposition before relator filed his complaint.
*188 {¶ 10} At the panel hearing, Maciak testified that his responsibilities at TBC included reorganizing executive departments, developing budgets, supervising human resources, and implementing new procedures for dealing with outside counsel. Following his promotion to senior vice president and general counsel, the majority of his time was devoted to what he termed "nonlegal functions." But his resume stated that he also oversaw in-house attorneys who actively managed litigation for the company, that he was "[h]ired to rebuild a legal team, reduce expenses, and garner confidence with the Board of Directors," and that he led "a team of 7 legal professionals, 30 human resources associates, and 5 contract administrators."
{¶ 11} Initially, neither Maciak nor his counsel believed that his activities constituted the practice of law or that holding himself out as general counsel violated the Florida rules governing UPL. After retaining new counsel, however, Maciak acknowledged that his conduct prior to obtaining AHC status in Florida constituted UPL.
{¶ 12} On these facts, the panel and board found that by engaging in UPL in Florida from April 2009 until he obtained AHC certification in December 2015, Maciak violated Prof.Cond.R. 5.5(a) (prohibiting a lawyer from practicing law in a jurisdiction in violation of the regulation of the legal profession in that jurisdiction). The panel and board also found that by practicing law in Florida from 2011 to 2015 while his Ohio license was under a CLE suspension, he committed a single violation of Prof.Cond.R. 8.4(h) (prohibiting a lawyer from engaging in conduct that adversely reflects on the lawyer's fitness to practice law).
{¶ 13} Despite the fact that the parties had stipulated to two additional violations of Prof.Cond.R. 5.5(a), the panel dismissed those alleged violations, because relator presented no evidence or testimony to support them. The panel also dismissed the remaining ten alleged violations.
{¶ 14} Among the charges dismissed were allegations that Maciak made false statements or failed to disclose information to relator in connection with his disciplinary investigation, in violation of Prof.Cond.R. 8.4(c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), and that that conduct was sufficiently egregious to support a separate finding that it adversely reflected upon his fitness to practice law, in violation of Prof.Cond.R. 8.4(h). See *489 Disciplinary Counsel v. Bricker , 137 Ohio St.3d 35, 2013-Ohio-3998, 997 N.E.2d 500, ¶ 21 (holding that a Prof.Cond.R. 8.4(h) violation requires clear and convincing evidence that conduct giving rise to a specific rule violation is so egregious as to warrant an additional finding that it adversely reflects on the lawyer's fitness to practice law). Specifically, relator alleged that in Maciak's responses to relator and during his deposition testimony, Maciak made false statements about when he first learned of his CLE suspension, because *189 there was some evidence that Maciak was aware of that suspension in February 2012.
{¶ 15} With regard to those alleged violations, the panel recognized that the parties had stipulated that someone used Maciak's login credentials to access his registration status and CLE transcript on the Office of Attorney Services' web portal in August 2009, August 2011, and October 2013-though neither Maciak nor his paralegal could recall having done so. And based on an internal e-mail from the Office of Attorney Services documenting a telephone inquiry from Maciak regarding his suspension, the panel found that Maciak was aware of his CLE suspension "at least as of [February 10, 2012]."[2]
{¶ 16} On the other hand, the panel also found that Maciak testified that he did not remember receiving written notices of his CLE noncompliance or suspension and that he did not recall telephoning the Office of Attorney Services in 2012 or accessing his attorney information on that office's web portal before 2015-not that those actions had never, in fact, occurred. In addition, the panel determined that Maciak's testimony was consistent with his counsel's written responses to relator's correspondence, which generally represented that Maciak was unaware of his CLE deficiencies and resulting suspension until October 2015.
{¶ 17} The panel emphasized that Maciak never contended that his inability to remember those events meant that they did not occur or that he should not be sanctioned by this court. It was impressed with Maciak's sincere distress over the allegation that he lied during the course of relator's investigation, his emotional apology, and the testimony from multiple witnesses who attested to his integrity, good character, and reputation for honesty. Moreover, the panel determined that Maciak's lack of recall could be attributed to a series of events from 2011 to 2013 that were "beyond just the press of business and the passage of time," including his efforts to learn his new job, his involvement in the "all-consuming" project of his employer's tender-offer acquisition of a publicly traded company, his paralegal's maternity leave following her premature delivery of twins, and the relocation of his office on two separate occasions.
{¶ 18} Ultimately, the panel found that while Maciak was "cavalier, inattentive, negligent, and foolish" with regard to his obligations under the Ohio, Texas, and Florida rules of professional conduct, "he did not lie."
Dismissal of Alleged Violations of Prof.Cond.R. 8.4(c) and 8.4(h)
{¶ 19} Relator objects to the panel's unanimous dismissal of the alleged violations of Prof.Cond.R. 8.4(c) and 8.4(h). Not only does he ask us to find that *190 Maciak lied when he said that he had been unaware of his CLE suspension, but relator also contends that Maciak's professed *490 lack of knowledge and his corresponding lack of diligence with respect to his licensing obligations are sufficiently egregious to support a separate finding that his conduct adversely reflected on his fitness to practice law. Relator claims to accept the panel's factual findings and states that he is not asking this court to reweigh the evidence or second-guess the panel's credibility determinations. Instead, relator asks us to review and reject the panel's legal conclusions with regard to the alleged violations of Prof.Cond.R. 8.4(c) and (h).
{¶ 20} This court has held, without limitation or exception, that a unanimous dismissal by the panel precludes further review of the dismissal by either the board or this court. See Disciplinary Counsel v. Hale , 141 Ohio St.3d 518, 2014-Ohio-5053, 26 N.E.3d 785, ¶ 22 ; Cuyahoga Cty. Bar Assn. v. Marosan , 109 Ohio St.3d 439, 2006-Ohio-2816, 848 N.E.2d 837, ¶ 13 ; Columbus Bar Assn. v. Dougherty , 105 Ohio St.3d 307, 2005-Ohio-1825, 825 N.E.2d 1094, ¶ 9. Therefore, an examination of the nature of relator's challenge-i.e., whether it is to the panel's legal conclusions or to the weight of the evidence-is unnecessary. Review of the dismissed counts, for any reason, is not permitted. We overrule relator's objection and adopt the board's findings of fact and misconduct.
Sanction
{¶ 21} When imposing sanctions for attorney misconduct, we consider several relevant factors, including the ethical duties the lawyer violated, the aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases. Because each disciplinary case is unique, however, we may take all relevant factors into account. Columbus Bar Assn. v. Watson , 144 Ohio St.3d 317, 2015-Ohio-4613, 42 N.E.3d 752, ¶ 7.
{¶ 22} The panel and board found that Maciak has been disciplined for registration and CLE violations in the past and that he failed to address his CLE suspension for a substantial period of time, but they attributed little weight to those aggravating factors. See Gov.Bar R. V(13)(B)(1). As mitigating factors, they found that Maciak did not act with a dishonest or selfish motive, demonstrated a cooperative attitude toward the disciplinary proceedings, presented favorable character and reputation testimony, had other penalties or sanctions imposed as a result of his noncompliance with CLE requirements, and did not harm any client. See Gov.Bar R. V(13)(C)(2), (4), (5), and (6). In addition, the panel and board credited Maciak's work with an organization that mentors disadvantaged and troubled young people, his sincere distress over allegations that he had lied during relator's investigation, his emotional apology, and his acceptance of responsibility-not only for his failure to promptly deal with his CLE suspension but also for his resulting UPL.
*191 {¶ 23} While recognizing that "[t]he normal penalty for continuing to practice law while under suspension is disbarment," Disciplinary Counsel v. Koury , 77 Ohio St.3d 433, 436, 674 N.E.2d 1371 (1997), the panel also noted several cases in which we imposed indefinite suspensions on attorneys who continued to practice law under registration or CLE suspensions. But the panel then considered three cases in which we imposed, for similar misconduct, varying term suspensions ranging from six months to two years with six months stayed: Ohio State Bar Assn. v. Good , 114 Ohio St.3d 204, 2007-Ohio-3602, 871 N.E.2d 542 ; Disciplinary Counsel v. Simmons , 120 Ohio St.3d 304, 2008-Ohio-6142, 898 N.E.2d 943 ; and Disciplinary Counsel v. Troller , 138 Ohio St.3d 307, 2014-Ohio-60, 6 N.E.3d 1138. Relying on these three cases, *491 the panel recommended that Maciak be suspended from the practice of law for one year, with six months stayed on conditions. The board adopted the panel's findings of fact and conclusions of law but recommended that Maciak be suspended from the practice of law for two years, with the entire suspension stayed on the conditions that he remain in full compliance with his CLE and attorney-registration obligations and engage in no further misconduct.
{¶ 24} Relator objects to the board's recommended sanction and argues that the board's reliance on Simmons , Good , and Troller is misplaced. Believing Maciak's misconduct to be more serious than the conduct at issue in those cases, his aggravating factors more plentiful, and his mitigating factors more scarce, relator argues that Maciak should be suspended from the practice of law for two years with no more than six months stayed. Although we agree that the facts in Simmons , Good , and Troller can be distinguished from those currently before us, we find that certain aspects of those cases are more egregious than Maciak's conduct and that Maciak's conduct presents a lesser risk of future harm to the public.
{¶ 25} In Simmons , we adopted a consent-to-discipline agreement and imposed a one-year suspension, with six months stayed, on an attorney who represented two clients in Michigan courts although he was not licensed in Michigan and his Ohio license had been suspended for a registration violation. But contrary to relator's suggestion that Simmons's misconduct occurred over a two-month period, he engaged in misconduct over the course of a year. Id. at ¶ 3-7. That conduct consisted of filing documents in Michigan courts, falsely informing the court that he was affiliated with a nonexistent law office, falsely representing that his sister (who was licensed to practice law in Michigan) was involved in the representation, and appearing at a hearing before the court and negotiating a settlement on behalf of a client without advising the court that he was not licensed to practice in that state. Id. In addition to finding that Simmons engaged in UPL in Michigan, we also found that he violated additional rules prohibiting *192 dishonesty and conduct that is prejudicial to the administration of justice-violations that have not been found with respect to Maciak. Id. at ¶ 9.
{¶ 26} In contrast to Maciak, whose license was suspended at the time of his misconduct, Good's Ohio law license was in good standing when he engaged in six incidents of UPL in Florida. Good , 114 Ohio St.3d 204, 2007-Ohio-3602, 871 N.E.2d 542, at ¶ 1, 3. But there was no suggestion that Good's UPL was limited to his serving as in-house counsel without the proper certification as Maciak's was-and the Supreme Court of Florida issued an injunction against Good and fined him $6,000. Id. at ¶ 3. In contrast, the Florida Bar dismissed its investigation against Maciak once he obtained AHC certification.
{¶ 27} Troller is the only other Ohio case in which an Ohio attorney continued to serve as in-house counsel for an extended period of time despite an ongoing CLE suspension. Both Troller and Maciak held themselves out as attorneys, worked with other attorneys on pending litigation, negotiated contracts, and performed human-resources functions on behalf of their employers. Troller , 138 Ohio St.3d 307, 2014-Ohio-60, 6 N.E.3d 1138, at ¶ 6-8. And though each of them was initially reluctant to acknowledge that his activities constituted the practice of law, each ultimately stipulated that those activities did constitute the practice of law. Id. at ¶ 6.
{¶ 28} Relator contends that Maciak's conduct is more serious than Troller's because once relator initiated his investigation, *492 Troller ceased engaging in acts constituting the practice of law and did not seek reinstatement until he served the court-ordered sanction for his misconduct. In contrast, relator argues, Maciak not only continued to offer legal advice to his employer but also made false statements while relator's investigation was pending. But as noted above, the panel unanimously dismissed relator's allegations of dishonest conduct and we have declined relator's invitation to revisit them here.
{¶ 29} Despite relator's arguments to the contrary, we find that Troller's misconduct was more egregious than Maciak's. Troller was under both CLE and registration suspensions and nothing in our Troller opinion suggests that he made any attempt to comply with the relevant rules. Troller at ¶ 1, 3. Maciak, on the other hand, complied with our registration requirements (with one brief exception that he promptly remedied). He also continued to both attend and present at numerous CLE programs-though he admitted that he failed to ensure that those programs were accredited and that he received credit for his participation. To safeguard against further lapses of his license, Maciak testified, he now completes and submits his CLE registrations and applications for credit himself and verifies his good standing on the attorney-services web portal on an almost daily basis.
*193 {¶ 30} Further, Troller continued to serve as in-house counsel and practice law in Ohio while his Ohio license was under suspension. Troller , 138 Ohio St.3d 307, 2014-Ohio-60, 6 N.E.3d 1138, at ¶ 1, 12. In contrast, Maciak's conduct occurred while he lived and worked in Florida, and that state, having achieved its objective of "get[ting] the [UPL] to stop," closed its UPL investigation once he obtained AHC certification. There is no allegation that Maciak improperly practiced law in Ohio while his license was under suspension.
{¶ 31} We by no means condone Maciak's nearly seven-year failure to keep abreast of his continuing obligation to participate in at least 24 hours of CLE for every biennial compliance period, to request credit for those activities, and to review his CLE transcript for accuracy. See Gov.Bar R. X(3) ; CLE Reg. 301 and 303. Nor do we condone his failure to familiarize himself with the Rules for the Government of the Bar of Ohio and the Ohio Rules of Professional Conduct and their counterparts in the other states in which he served as in-house corporate counsel. Nonetheless, given the specific and narrow facts of Maciak's proven misconduct, the substantial evidence of his good character and remorse, and the affirmative steps he has taken to prevent similar violations in the future, we overrule relator's objection and agree that a two-year suspension, stayed in its entirety upon the conditions recommended by the board, is the appropriate sanction in this case.
{¶ 32} Accordingly, Brian Allen Maciak is suspended from the practice of law in Ohio for two years, with the suspension stayed in its entirety on the conditions that he remain in full compliance with his CLE and attorney-registration obligations and engage in no further misconduct. If Maciak fails to comply with the conditions of the stay, the stay will be lifted, and he will serve the entire two-year suspension. Costs are taxed to Maciak.
Judgment accordingly.
O'Donnell, Kennedy, French, O'Neill, Fischer, and DeWine, JJ., concur.
O'Connor, C.J., concurs in judgment only, with an opinion.
O'Connor, C.J., concurring in judgment only.
*493 {¶ 33} I am very troubled by the fact that the majority announces a rule change and circumvents the court's rulemaking process when there is no legitimate reason to do so and no urgency with which to justify the deviation.
{¶ 34} The majority opinion states, "This court has held, without limitation or exception , that a unanimous dismissal by the panel precludes further review of the dismissal by either the board or this court." (Emphasis added.) Majority opinion at ¶ 20. The cases cited in support of that statement refer to a dismissal under prior versions of the rule now codified as Gov.Bar R. V(12)(G), which *194 permits a unanimous hearing panel to dismiss a disciplinary complaint or charge "[i]f, at the end of the evidence presented by the relator or of all evidence, a unanimous hearing panel finds that the evidence is insufficient to support a charge or count of misconduct." (Emphasis added.) Such a dismissal precludes further review by the full board or this court. See Cincinnati Bar Assn. v. Fernandez , 147 Ohio St.3d 329, 2016-Ohio-5586, 65 N.E.3d 724, ¶ 13-15.
{¶ 35} Both the rule and the cited case law refer to dismissals for insufficient evidence . That is exactly what is at issue here, despite relator's argument that his challenge is based on the panel's legal conclusions. The court could and should stop there, but it does not.
{¶ 36} Members of the public and the legal profession should take note. It is true that this court has held that a unanimous dismissal under Gov.Bar R. V(12)(G) or its predecessor rule precludes further review of the dismissed counts by the board or this court. But the majority opinion states now, for the first time, that this court has held "without limitation or exception " that review is precluded. (Emphasis added.) Majority opinion at ¶ 20. These are dangerous words when used with the intent to limit-and when having the effect of limiting-the authority of this court.[3] The majority drives home its objective in the next sentence by stating that "an examination of the nature of relator's challenge-i.e., whether it is to the panel's legal conclusions or to the weight of the evidence-is *494 unnecessary." Majority opinion at ¶ 20. And, to further reiterate its point, the next sentence of the majority opinion states, "Review of the dismissed counts, for any reason , is not permitted." (Emphasis added.) Id. Again, these are dangerous words and do not square with our legal precedent. *195 {¶ 37} In a single paragraph, the majority has detached the case law from its mooring in the rules and then misapplied it to the case at hand to announce an expanded limitation on this court's review of dismissals in disciplinary cases. Making this overreach worse is the fact that this case does not require it.
{¶ 38} Make no mistake: the majority opinion has announced a rule change. For the Rules for the Government of the Bar, this court follows a rulemaking procedure to promulgate new and amend existing rules:
Although the Ohio Constitution does not require legislative review of rules governing the discipline of attorneys, we follow a rulemaking procedure to promulgate new and amend existing Rules for the Government of the Bar. This process includes public notice, time for public comment and input from stakeholders such as interested committees or task forces, and a process for the justices to consider public comments received and proposed changes before final approval.
Disciplinary Counsel v. Kramer , 149 Ohio St.3d 425, 2016-Ohio-5734, 75 N.E.3d 1174, ¶ 31.
{¶ 39} For a court that prides itself on valuing public comment, input from stakeholders, recommendations of our boards and commissions, and a consistent deliberative process before making changes to any of its rules, the majority's decision to pronounce a rule from the bench, without necessity, is all the more disturbing. I cannot join the opinion, because it breaches our longstanding rule-making process.
{¶ 40} I concur in the sanction for respondent, Brian Allan Maciak, as announced in the majority opinion, but nothing more.

R. Regulating Fla. Bar 17-1.1 et seq. provides a safe harbor for attorneys licensed to practice in other jurisdictions to serve as in-house counsel for business organizations located in Florida without taking the bar exam, provided that they are certified as AHC by the Supreme Court of Florida. The rules, however, limit the activities of AHC. R. Regulating Fla. Bar 17-1.3(a)(1) through (3).

The e-mail, dated February 10, 2012, states: "Attorney Brian Maciak (pronounced may see ak) would like you to return his call. He has just receive [sic] a letter informing him that he is not compliant with his cle requirements and was, until now, unaware that he had been cle suspended and wants to know what he can do to clear this up."

In fact, in the three cases that the majority opinion cites for the general statement that a dismissal precludes further review, this court recognized limitations and exceptions. In Disciplinary Counsel v. Hale , 141 Ohio St.3d 518, 2014-Ohio-5053, 26 N.E.3d 785, ¶ 22, the court noted the general rule but explained that it could review a recommendation of dismissal if not accompanied by the requisite notices to effectuate a dismissal. In Cuyahoga Cty. Bar Assn. v. Marosan , 109 Ohio St.3d 439, 2006-Ohio-2816, 848 N.E.2d 837, ¶ 13, the court stated that it did not review "such dismissals," referring to dismissals for insufficient evidence described in the rule. And in Columbus Bar Assn. v. Dougherty , 105 Ohio St.3d 307, 2005-Ohio-1825, 825 N.E.2d 1094, ¶ 9, the court cited the rule for dismissals based on insufficient evidence and the decision in In re Complaint Against Harper , 77 Ohio St.3d 211, 216, 673 N.E.2d 1253 (1996), in which the court recognized that it was not precluded from reviewing a panel's recommended dismissal.
More recently, we have explained, "Under past versions of the rule, * * * further review of a unanimous dismissal was precluded only when the panel also gave written notice of that action" to the required parties. Cincinnati Bar Assn. v. Fernandez , 147 Ohio St.3d 329, 2016-Ohio-5586, 65 N.E.3d 724, ¶ 14. Under the current version of the rule, Gov.Bar R. V(12)(G), the notice requirements are more forgiving and the panel may report a dismissed count or complaint in the body of its report to effectuate dismissal. Id. at ¶ 15. Nonetheless, the type of dismissal expressly discussed, and the type of dismissal for which this court's review is precluded, is one for insufficient evidence under Gov.Bar R. V(12)(G). See id.