**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Disciplinary Counsel v. Mancino,* **Slip Opinion No. 2018-Ohio-3017.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2018-OHIO-3017

DISCIPLINARY COUNSEL *v.* MANCINO.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Mancino,* Slip Opinion No. 2018-Ohio-3017.]**

*Attorneys—Misconduct—When a professional-conduct rule found by the Board of Professional Conduct to be violated requires that an attorney-client relationship exist and no such relationship existed, the finding of a violation cannot be accepted—When a panel of the Board of Professional Conduct unanimously dismisses a count of a disciplinary complaint for insufficient evidence under Gov.Bar R. V(12)(G), the dismissal is not reviewable by the board or by the Supreme Court of Ohio—Complaint dismissed.*

(No. 2017-1079—Submitted November 21, 2017—Decided August 2, 2018.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2016-074.

_____

**Per Curiam.**

{¶ 1} Respondent, Paul Anthony Mancino Jr., of Cleveland, Ohio, Attorney Registration No. 0015576, was admitted to the practice of law in Ohio in 1963.

{¶ 2} On December 6, 2016, relator, disciplinary counsel, filed a complaint in which he alleged that Mancino violated eight Rules of Professional Conduct by filing and prosecuting an appeal of Raymond Miller's criminal conviction and accepting compensation for that appeal from a third person—all without Miller's knowledge or consent.

{¶ 3} After conducting a hearing, a three-member panel of the Board of Professional Conduct unanimously dismissed five of the alleged rule violations based on the insufficiency of the evidence. But the panel found that Mancino's conduct violated Prof.Cond.R. 1.2(a) (requiring a lawyer to abide by the client's decisions concerning the objectives of representation and to consult with the client as to the means by which they are to be pursued), 1.4(a)(1) (requiring a lawyer to inform the client of any decision or circumstance with respect to which the client's informed consent is required), and 1.8(f) (prohibiting a lawyer from accepting compensation for representing a client from someone other than the client without the client's informed consent). After considering the relevant aggravating and mitigating factors and the sanctions we have imposed for comparable misconduct, the panel recommended that we publicly reprimand Mancino. The board adopted the panel's report in its entirety.

{¶ 4} Mancino objects and argues that the board's findings of misconduct cannot stand because there can be no violation of Prof.Cond.R. 1.2(a), 1.4(a)(1), and 1.8(f) in the absence of an attorney-client relationship. He therefore urges us to reject the board's findings of misconduct, dismiss relator's complaint, and not require him to pay the costs of the proceedings. For the reasons that follow, we sustain Mancino's objection and dismiss relator's complaint.

**{¶ 5}** Mancino represented Michael Jirousek in a criminal action. Subsequently, Jirousek's father, Robert, approached Mancino and told him that Miller—a man who had been jailed with Michael Jirousek—wanted to appeal his criminal conviction and sentence. Robert Jirousek offered to pay Mancino a $1,000 flat fee and the costs of Miller's appeal. Relying on Robert Jirousek's word and his offer of payment, Mancino filed a notice of appeal and a brief on Miller's behalf and identified himself on both as "Attorney for Defendant-Appellant." Mancino later orally argued the case in the court of appeals, which affirmed Miller's conviction and sentence. Robert Jirousek paid Mancino for the representation and also paid the costs associated with the appeal.

**{¶ 6}** Although the board recognized that Miller had testified at the disciplinary hearing that "he had not been harmed in any way" by Mancino's actions and it found that Mancino had acted in good faith on Robert Jirousek's representations that Miller wanted to appeal his conviction, it also found that neither Mancino nor Robert Jirousek ever received any direct communication from Miller of any type. Ultimately, it was Mancino's admitted failure to communicate with Miller that led the board to find that he violated Prof.Cond.R. 1.2(a), 1.4(a)(1), and 1.8(f).

**{¶ 7}** Despite finding that Mancino committed those ethical violations by failing to communicate with his "client," the board noted that Miller testified at the disciplinary hearing that he had been "unaware" of Mancino's representation of him. The board also acknowledged that Miller had signed an affidavit stating that Mancino was not his attorney and that Miller had never asked him or anyone else to appeal his conviction. Indeed, the board recognized that Miller's testimony and affidavit "could arguably support a dismissal" of two of the violations it found—those under Prof.Cond.R. 1.2(a) and 1.4(a)(1)—on the ground that no attorney-client relationship existed.

**{¶ 8}** On these facts, it is obvious that there was no express agreement for Mancino to represent Miller. Therefore, if an attorney-client relationship did exist, it could have arisen only by implication. We have held that "[a]n attorney-client relationship may be created by implication based upon the conduct of the parties and the reasonable expectations of the person seeking representation." *Cuyahoga Cty. Bar Assn. v. Hardiman*, 100 Ohio St.3d 260, 2003-Ohio-5596, 798 N.E.2d 369, syllabus.

**{¶ 9}** In a case in which some of the alleged violations arose in a factual context similar to the facts of this case, *Disciplinary Counsel v. Mamich*, 125 Ohio St.3d 369, 2010-Ohio-1044, 928 N.E.2d 691, ¶ 13, we dismissed stipulated violations of Prof.Cond.R. 1.2(a), 1.4(a)(1), and 1.4(a)(3) (requiring a lawyer to keep the client reasonably informed about the status of a matter) leveled against an attorney who represented a woman in a debt-collection proceeding at the request of the woman's father but without her knowledge or consent. We reasoned that the violations of Prof.Cond.R. 1.2(a), 1.4(a)(1), and 1.4(a)(3) were not established because the charges required an attorney-client relationship between the attorney and the daughter. Because the daughter was unaware of the case and had no reasonable expectation that the attorney was representing her, there was no attorney-client relationship, either express or implied, with the daughter. *Id.*

**{¶ 10}** Just as an attorney-client relationship is necessary to establish violations of Prof.Cond.R. 1.2(a) and 1.4(a)(1), which require a lawyer to consult with a client, abide by the client's decisions regarding the objectives of the representation, and obtain the client's informed consent, such a relationship is necessary to establish a violation of Prof.Cond.R. 1.8(f), which requires a lawyer to obtain a client's informed consent before accepting compensation for the representation from someone other than the client. In light of Miller's testimony and averments, however, it is evident that no attorney-client relationship existed

here.  Consequently, we reject the board's findings that Mancino violated Prof.Cond.R. 1.2(a), 1.4(a)(1), and 1.8(f).

{¶ 11} We do not condone Mancino's decision to undertake legal representation without making any attempt to communicate with the intended client until *after* the case was decided by the court of appeals.  But we are constrained from considering whether his conduct violated any other professional-conduct rules because the panel unanimously dismissed the balance of the violations alleged in relator's complaint based on the insufficiency of the evidence.  *See* Gov.Bar R. V(12)(G); *Cincinnati Bar Assn. v. Wiest*, 148 Ohio St.3d 683, 2016-Ohio-8166, 72 N.E.3d 621, ¶ 19, quoting *Disciplinary Counsel v. Hale*, 141 Ohio St.3d 518, 2014-Ohio-5053, 26 N.E.3d 785, ¶ 22 (a unanimous dismissal of a count of a complaint by a panel of the board " 'precludes further review of the dismissal by either the board or this court' ").

{¶ 12} Accordingly, we sustain Mancino's objection and dismiss relator's complaint against him with prejudice.

Judgment accordingly.

KENNEDY, FRENCH, PIETRYKOWSKI, and DEWINE, JJ., concur.

FISCHER, J., concurs, with an opinion joined by O'CONNOR, C.J., and O'DONNELL, J.

MARK J. PIETRYKOWSKI, J., of the Sixth District Court of Appeals, sitting for O'NEILL, J.

_____

**FISCHER, J., concurring.**

{¶ 13} In this case, the hearing panel of the Board of Professional Conduct unanimously dismissed five of the eight alleged disciplinary-rule violations—those involving Prof.Cond.R. 1.4(a)(3) (requiring a lawyer to keep the client reasonably informed about the status of a matter), 3.3(a)(1) (prohibiting a lawyer from knowingly making a false statement of fact or law to a tribunal), 8.1(a) (prohibiting

a lawyer from knowingly making a false statement of material fact in connection with a disciplinary matter), 8.4(d) (prohibiting a lawyer from engaging in conduct that is prejudicial to the administration of justice), and 8.4(h) (prohibiting a lawyer from engaging in conduct that adversely reflects on the lawyer's fitness to practice law)—for lack of sufficient evidence pursuant to Gov.Bar R. V(12)(G). The per curiam opinion, relying on this court's prior caselaw and Gov.Bar R. V(12)(G), concludes that we are constrained from considering the dismissed allegations. While I join the per curiam opinion and agree that this conclusion is appropriate given the current state of the law, I write separately to express my concerns regarding unanimous hearing-panel dismissals under Gov.Bar R. V(12)(G).

**I. Unanimous Hearing-Panel Dismissals Pursuant to Gov.Bar R. V(12)(G)**

{¶ 14} Pursuant to Gov.Bar R. V(12)(G), a hearing panel may dismiss a count or a complaint that the panel unanimously determines is unsupported by sufficient evidence. When less than the entire complaint is dismissed, the hearing panel need only include the unanimous dismissal of a count in the body of its report to effectuate the dismissal. *Cincinnati Bar Assn. v. Fernandez*, 147 Ohio St.3d 329, 2016-Ohio-5586, 65 N.E.3d 724, ¶ 15.

{¶ 15} When a hearing panel unanimously dismisses counts pursuant to Gov.Bar R. V(12)(G), the dismissal order is effectively insulated from any type of review. *See Disciplinary Counsel v. Maciak*, ___ Ohio St.3d ___, 2018-Ohio-544, ___N.E.3d___, ¶ 20. Reading Gov.Bar R. V(12)(G) in conjunction with Gov.Bar R. V(11)(D), V(12)(H), and V(17)(B) compels this conclusion.

{¶ 16} Gov.Bar R. V(12)(G) provides:

> If, at the end of the evidence presented by the relator or of all evidence, a unanimous hearing panel finds that the evidence is insufficient to support a charge or count of misconduct, the panel may order on the record or in its report that the complaint or count

6

be dismissed. If a unanimous hearing panel dismisses a complaint in its entirety, the director shall send a dismissal entry to the relator, respondent, and all counsel of record.

The rule provides no mechanism for the Office of Disciplinary Counsel or a certified grievance committee to submit objections or for the board or *this court*, which has the constitutional duty to oversee the practice of law in this state under Article IV, Sections 2(B)(1)(g) and 5(B) of the Ohio Constitution, to review a dismissed count or a dismissed complaint.

{¶ 17} In contrast, Gov.Bar R. V(11)(D) permits the Office of Disciplinary Counsel or a certified grievance committee to appeal to the full board the decision of a probable-cause panel to dismiss a complaint in its entirety. Additionally, Gov.Bar R. V(17)(B) permits the parties in a disciplinary case in which this court has issued a show-cause order under Gov.Bar R. V(17)(A) to "file objections to the findings or recommendations of the Board and to the entry of a disciplinary order or to the confirmation of the report on which the order to show cause was issued."

{¶ 18} If this court were to deem that a unanimous dismissal of some counts pursuant to Gov.Bar R. V(12)(G) could be reviewed by this court, despite the rules providing no mechanism for doing so, the explicitly provided mechanisms for the filing of appeals and objections pursuant to Gov.Bar R. V(11)(D) and V(17)(B) would be rendered superfluous. Thus, Gov.Bar R. V(12)(G)'s lack of a mechanism for review demonstrates that appeals and objections from a unanimous hearing panel's dismissal order are not permitted under the rule. *See, e.g., Fernandez*, 147 Ohio St.3d 329, 2016-Ohio-5586, 65 N.E.3d 724, at ¶ 15 (court declined to entertain objections to counts that hearing panel unanimously dismissed in body of its report); *see also Cuyahoga Cty. Bar Assn. v. Marosan*, 109 Ohio St.3d 439, 2006-Ohio-2816, 848 N.E.2d 837, ¶ 13.

{¶ 19} Furthermore, Gov.Bar R. V(12)(H) provides that as an alternative to a unanimous dismissal, a hearing panel can refer its findings of fact and recommendations for dismissal to the board for review. To permit review by the board of unanimous Gov.Bar R. V(12)(G) dismissals would render Gov.Bar R. V(12)(H) superfluous. For these reasons, I agree with the conclusion stated in the per curiam opinion that a count that is unanimously dismissed by a hearing panel is currently precluded from review by the board or by this court. *See also Maciak*, ___ Ohio St.3d ___, 2018-Ohio-544, ___N.E.3d___, at ¶ 20; *Fernandez* at ¶ 14-15; *Cincinnati Bar Assn. v. Wiest*, 148 Ohio St.3d 683, 2016-Ohio-8166, 72 N.E.3d 621, ¶ 19; *Disciplinary Counsel v. Hale*, 141 Ohio St.3d 518, 2014-Ohio-5053, 26 N.E.3d 785, ¶ 22; *Disciplinary Counsel v. Doellman*, 127 Ohio St.3d 411, 2010-Ohio-5990, 940 N.E.2d 928, ¶ 31; *Marosan* at ¶ 13; *Columbus Bar Assn. v. Dougherty*, 105 Ohio St.3d 307, 2005-Ohio-1825, 825 N.E.2d 1094, ¶ 9.

## II. Issues for this Court

{¶ 20} Under Gov.Bar R. V(12)(G), we are precluded from reviewing counts that are unanimously dismissed by hearing panels. The practical consequences of this preclusion, however, present at least three serious obstacles to this court's performance of its duties.

{¶ 21} First, this court is constitutionally required to regulate all matters related to the practice of law. Article IV, Section 2(B)(1)(g), Ohio Constitution. Although this court has original jurisdiction in such matters, Gov.Bar R. V(12)(G) precludes this court from acting as the final arbiter of these matters related to attorney discipline despite our caselaw making clear that the responsibility is uniquely ours. *See* C*incinnati Bar Assn. v. Heitzler*, 32 Ohio St.2d 214, 220, 291 N.E.2d 477 (1972) (this court makes the ultimate conclusion "as to the facts and as to the action, if any, that should be taken" in disciplinary cases); *Lorain Cty. Bar Assn. v. Johnson*, 151 Ohio St.3d 448, 2017-Ohio-6869, 90 N.E.3d 837, ¶ 19 (this court is the final arbiter of misconduct in disciplinary cases even though we

ordinarily defer to the expertise of the board and the panel and their first-hand observation of witness testimony); Gov.Bar R. V(2)(B) (the board's hearing authority is that it shall "submit recommendations" to this court).

**{¶ 22}** Second, the primary purpose of the disciplinary process is to protect the public from lawyers who are unworthy of the trust and confidence essential to the attorney-client relationship. *Disciplinary Counsel v. Agopian*, 112 Ohio St.3d 103, 2006-Ohio-6510, 858 N.E.2d 368, ¶ 10. But when a count is unanimously dismissed by a hearing panel for insufficient evidence under Gov.Bar R. V(12)(G), this court's hands are tied and we are unable to exercise our constitutional authority. *See Maciak*, ___ Ohio St.3d ___, 2018-Ohio-544, ___N.E.3d___, at ¶ 20 ("Review of the dismissed counts, for any reason, is not permitted").

**{¶ 23}** Third, if a hearing panel erroneously applies the professional-conduct rules to the facts or errs in interpreting the elements of a disciplinary rule that the attorney has allegedly violated and unanimously dismisses some counts based on that misinterpretation, we cannot revive the dismissed counts even though the dismissals would not have occurred but for the legal error.

**{¶ 24}** Here, we are presented with a situation in which an attorney who did *not* represent an individual filed, on behalf of that individual, a brief stating to a court that he was in fact the individual's attorney. The hearing panel found violations that were based on the existence of an attorney-client relationship and unanimously dismissed some other counts that were arguably supported by the facts of this case regardless of whether an attorney-client relationship existed. On review, we recognize that the hearing panel and the board erred in recommending that we find that the attorney committed violations that were based on an attorney-client relationship, because it is evident that the attorney did not have an attorney-client relationship with the individual. Therefore, we cannot agree with the board that the attorney violated those particular professional-conduct rules.

**{¶ 25}** But the attorney's conduct, despite the lack of an attorney-client relationship, arguably violated several professional-conduct rules, most notably Prof.Cond.R. 3.3(a) and 8.4(h); the counts concerning those rules, however, were unanimously dismissed by the hearing panel, and the board and this court are precluded from reviewing them. Had the hearing panel properly discerned the lack of an attorney-client relationship, it may not have unanimously dismissed those counts for lack of sufficient evidence. Regrettably, we cannot revive or review those dismissed counts, and our responsibility to protect the public from the attorney's possible misbehavior has been thwarted.

### III. Conclusion

**{¶ 26}** The practice of hearing panels unanimously dismissing counts based on insufficient evidence—which most often occurs after a hearing is already over—may, on some occasions, expedite the disciplinary process, but the practice allows for legal mistakes to sometimes be made that this court is never able to correct. A hearing panel should not have the power to totally insulate its own possible errors from review; rather, this court should and constitutionally must be in a position to bear the burden as the ultimate arbiter of attorney discipline. Given the restraints that have been placed on this court's ability to review Gov.Bar R. V(12)(G) unanimous dismissals, I caution hearing panels against easily and unanimously dismissing counts based on a lack of sufficient evidence, especially in cases in which the complexities make it difficult to determine exactly which rules an attorney may have violated, as inherently shown by the situation in this case. I also encourage this court to review Gov.Bar R. V(12)(G) and determine whether amending the rule would allow us to better protect the public.

**{¶ 27}** I agree with the majority on the application of the current law to this case, and I therefore join the per curiam opinion. Nonetheless, I feel compelled to highlight the consequences of an erroneous, but unanimous, hearing-panel dismissal of some counts of a complaint under Gov.Bar R. V(12)(G). Under the

current rules and our precedents, which we created, an attorney may go unpunished for his misconduct—and the public will remain unprotected—in a situation in which the panel, the board, and this court agree that an attorney has violated one or more of the professional-conduct rules but disagree on which specific rule or rules the attorney has violated.

O'CONNOR, C.J., and O'DONNELL, J., concur in the foregoing opinion.

_____

Scott J. Drexel, Disciplinary Counsel, and Michelle R. Bowman, Assistant Disciplinary Counsel, for relator.

Mancino Co., L.P.A., and Brett M. Mancino, for respondent.

_____